

**FILE**
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE JUN 1 9 2014

for CHIEF JUSTICE

This opinion was filed for record
at 8:00 a.m. on June 19, 2014

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| ROBIN EUBANKS and ERIN GRAY, | ) ) ) | No. 88021-2 |
| Respondents, | ) ) | |
| v. | ) ) | |
| | ) | En Banc |
| DAVID BROWN, individually and on behalf of his marital community, | ) ) ) | |
| Petitioner, | ) ) | Filed     **JUN 1 9 2014** |
| and | ) ) ) | |
| KLICKITAT COUNTY, KLICKITAT COUNTY PROSECUTING ATTORNEY'S OFFICE, | ) ) ) ) ) | |
| Defendants. | ) ) | |

FAIRHURST, J.—Petitioner David Brown seeks review of a Court of Appeals published opinion holding that venue for this sexual harassment suit was proper in Clark County. Brown argues that RCW 4.12.020(2) requires that suits against public officers for acts done "in virtue of his or her office" proceed in the

county where the acts occurred. In this case, Brown claims the suit brought against him must proceed in Klickitat County. We affirm venue is proper in Clark County because we hold that the acts alleged in this complaint were not "in virtue of" Brown's public office under RCW 4.14.020(2).

I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Respondents Robin Eubanks and Erin Gray allege Brown engaged in sexual harassment against them. From September 2007 to July 2010 Brown was a deputy prosecuting attorney in the Klickitat County Prosecuting Attorney's Office (Prosecutor's Office) where he supervised administrative assistants Eubanks and Gray.

The complaint alleges that Brown engaged in the following inappropriate actions toward Eubanks:

> (1) [S]itting in their shared office with his pants unzipped and legs spread open upon his desk on a regular basis; (2) staring at Ms. Eubanks for unusually long periods of time while Ms. Eubanks was attempting to work; (3) licking his lips constantly while he was talking to Ms. Eubanks; (4) following her around the office; (5) positioning himself so that Ms. Eubanks would need to rub against his body as she left their office; (6) closing the door on the office when they were in the small office space together; and (7) giving gifts to Ms. Eubanks, even though she made it clear she did not want to accept them.

Clark County Clerk's Papers (CCP) at 10. Further, the complaint alleges that Brown engaged in the following inappropriate actions toward Gray:

> (1) [S]taring at Ms. Gray's breasts during the conversations with her several times daily; (2) staring at Ms. Gray for unusually long periods of time while Ms. Gray was trying to work at her desk in her office; (3)

2

licking his lips constantly while he was talking to her, as well as following her around the office; (4) positioning himself so that Ms. Gray, who was pregnant at the time, would need to rub against [his] body as she left the front door to the office; (5) hanging around outside Ms. Gray's office for unusually long periods of time doing nothing other than breathing heavily.

CCP at 12.

Eubanks and Gray (hereinafter Eubanks) filed this suit against Brown in his individual capacity, the Prosecutor's Office, and Klickitat County in Benton County Superior Court. Eubanks mistakenly believed that RCW 36.01.050, which governs venue for suits against a county, allowed for venue in any neighboring county, rather than the two nearest judicial districts. Upon realizing it was only the two nearest judicial districts, Eubanks moved to transfer venue to an appropriate county, Clark County Superior Court. Brown responded, claiming that under RCW 4.12.020(2), only Klickitat County Superior Court was an appropriate venue for the claims against him. However, his response did not request a change of venue to Klickitat County Superior Court or ask the Benton County Superior Court to deny the transfer of venue to Clark County Superior Court. Benton County Superior Court granted the motion to transfer venue to Clark County Superior Court.

After the change of venue to Clark County Superior Court, Brown moved for a dismissal or a change of venue to Klickitat County Superior Court based on RCW 4.12.025(1) and RCW 4.12.020(2). He argued that venue was proper in Klickitat County Superior Court because he resided there and, alternatively, because the

alleged tortious acts occurred in virtue of his public office and took place there. Clark County Superior Court denied Brown's motion to dismiss or motion to change venue on both grounds. The Court of Appeals affirmed. Brown moved for discretionary review, which we granted. *Eubanks v. Brown*, 176 Wn.2d 1026, 301 P.3d 1047 (2013).

## II.    ISSUE PRESENTED

Do Eubanks' claims against Brown involve acts done in virtue of his public office under RCW 4.12.020(2), thus requiring venue in Klickitat County?

## III.    ANALYSIS

A.    Venue depends on whether RCW 4.12.020(2) applies to this case

The initial choice of venue belongs to the plaintiff. *Hatley v. Saberhagen Holdings, Inc.*, 118 Wn. App. 485, 488-89, 76 P.3d 255 (2003) (noting this concept is a "well-established principle"). If initial venue is not proper as to the defendant, the defendant may either waive their objection to the erroneous venue by failing to object or move to transfer the case to where venue is proper. *See, e.g., Youker v. Douglas County*, 162 Wn. App. 448, 459-60, 258 P.3d 60 (2011). If the defendant objects, the case must be transferred to a court with proper venue. *See, e.g., Roy v. City of Everett*, 48 Wn. App. 369, 372, 738 P.2d 1090 (1987). Venue in Benton County Superior Court was not proper as to Brown, and he objected. After the case was transferred to Clark County Superior Court, Brown again objected and moved

to change venue. Because Brown objected, the court must make the determination

where venue is proper.

Proper venue is governed by statute in Washington. *Parker v. Wyman*, 176

Wn.2d 212, 222, 289 P.3d 628 (2012). There are two venue statutes that might apply

to this case, RCW 4.12.020(2) and RCW 36.01.050. RCW 4.12.020(2) applies to

certain types of suits against public officials. It provides, in relevant part:

> Actions for the following causes shall be tried in the county where the
> cause, or some part thereof, arose:
>
> . . . .
> (2) Against a public officer, or person specially appointed to
> execute his or her duties, for an act done by him or her in virtue of his
> or her office, or against a person who, by his or her command or in his
> or her aid, shall do anything touching the duties of such officer.

RCW 4.12.020. If this statute applies, venue is mandatory in the county where the

cause arose.[1]

The other statute involved, RCW 36.01.050, is applicable to all cases in which

a county is a defendant. It authorizes proper venue over a county defendant in "the

superior court of such county, or in the superior court of either of the two nearest

judicial districts." RCW 36.01.050(1). If venue is not mandatory in the county

where the cause arose based on RCW 4.12.020(2), then it is proper in the defendant

county or either of the two nearest judicial districts.

---

[1] The use of the word "shall" in RCW 4.12.020(2) emphasizes the mandatory nature of this provision. *Ballasiotes v. Gardner*, 97 Wn.2d 191, 195, 642 P.2d 397 (1982) (citing *Wash. State Liquor Control Bd. v. Wash. State Pers. Bd.*, 88 Wn.2d 368, 377, 561 P.2d 195 (1977)).

Consequently, this court must first determine whether RCW 4.12.020(2) applies. If it does, venue must be in Klickitat County. To determine venue, the court assumes the allegations in the complaint are true. *Greenius v. Am. Sur. Co. of N.Y.*, 92 Wash. 401, 403, 159 P. 384 (1916) (look at claim of trespass in complaint to determine venue); *Roy*, 48 Wn. App at 370 (look at claims of negligence, failure to perform duties under the domestic violence act, denial of equal protection, denial of federal civil rights, and assault in the complaint to determine venue). The applicability of RCW 4.12.020(2) and venue for this action turn on the statutory interpretation of the phrase "an act done . . . in virtue of his or her office."

B.      An act in virtue of his or her public office is an act exercising or failing to exercise the authority of the office

We must interpret the meaning of "in virtue of" in RCW 4.12.020(2). We review de novo questions of statutory meaning to discern and implement the legislature's intent. *Manary v. Anderson*, 176 Wn.2d 342, 350-51, 292 P.3d 96 (2013); *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003). We begin by looking at the "'statute's plain language and ordinary meaning.'" *J.P.*, 149 Wn.2d at 450 (quoting *Nat'l Elec. Contractors Ass'n v. Riveland*, 138 Wn.2d 9, 19, 978 P.2d 481 (1999)). Where the language of a statute is unambiguous, we "must give effect to that plain meaning as an expression of legislative intent." *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002).

"If the legislature uses a term well known to the common law, it is presumed that the legislature intended it to mean what it was understood to mean at common law." *N.Y. Life Ins. Co. v. Jones*, 86 Wn.2d 44, 47, 541 P.2d 989 (1975). RCW 4.12.020(2) has remained essentially unchanged since territorial days. *See* LAWS OF 1854, § 14, at 133.

The common law defines acts done virtute officii (in virtue of a public office) as acts a public official is authorized to perform as part of his or her position, even if improperly or wrongfully performed. *See, e.g.*, *Greenius*, 92 Wash. at 403-04 ("That is to say, if his office gives him authority to act, he is acting in virtue of his office, although, in the performance of a specific duty, he improperly exercises his authority."); *Feller v. Gates*, 40 Or. 543, 546, 67 P. 416 (1902) ("'Acts done *virtute officii* are where they are within the authority of the officer, but in doing it he exercises that authority improperly, or abuses the confidence which the law reposes in him.'" (quoting *People ex rel. Kellogg v. Schuyler*, 4 N.Y. 173, 187 (1850) (Pratt, J. dissenting))); *Gerber v. Ackley*, 37 Wis. 43, 44 (1875) ("It is an official act, a failure to perform an official duty, or performing it in an improper manner."). This term was historically contrasted with acts done colore officii (under color of office), which were acts beyond the scope of authority given by one's office. *Greenius*, 92 Wash. at 405; *Haffner v. U.S. Fid. & Guar. Co.*, 35 Idaho 517, 520, 207 P. 716 (1922) ("[A]cts done '*colore offici*' are those which are entirely outside or beyond

the authority conferred by the office."), *overruled in part by Helgeson v. Powell*, 54 Idaho 667, 34 P.2d 957 (1934).[2]

This distinction between the two concepts in early common law is illustrated in *Haffner*, an Idaho case, in the context of a nearly identical venue statute. 35 Idaho at 520.[3] Haffner sued the Power County sheriff under two causes of action: (1) false arrest and imprisonment and (2) conversion. *Id.* In regard to the false arrest, the court held that the sheriff acted in virtue of his public office because he had the authority as part of his office to make arrests and even his wrongful use of that official authority was done in virtue of his public office. *Id.* at 521. The sheriff's motivations were irrelevant; all that mattered was whether his action was an authorized act. *See id.* In regard to the conversion claim, the sheriff took Haffner's property without any

---

[2]Many of the cases discussing an act done in virtue of a public office discuss the issue in the context of insurer liability for the actions of law enforcement officers. *See, e.g., Greenius*, 92 Wash. at 401. Insurers were liable for acts done in virtue of a public office, but not for acts done under color of office. *Id.* at 403-04. The later decisions, like our decision in *Greenius* and the Idaho Supreme Court's opinion in *Helgeson*, abolished the distinction for purposes of insurer liability on the theory that if an officer did wrong, the fact that his or her office authorized the act should not preclude a plaintiff from recovering from the officer's insurer. *Id.* at 407-08; *Helgeson*, 34 P.2d at 965-66. As Justice Givens observed in his concurrence in *Helgeson*, this policy decision should have no effect on the meaning of an act done in virtue of a public office in the context of venue. 34 P.2d at 966 (Givens, J. concurring).

[3]*Helgeson* overruled *Haffner* in regard to when an insurer of police conduct can be held liable. *Id.* at 965-66. After *Helgeson*, surety liability was no longer dependent on what authority the officer had or purported to have. *Id.* Instead, surety liability was thereafter dependent on whether an officer would have taken the action he took if he had not been an officer. *Id.* While this change affected the rule from *Haffner*, it did not overrule what was said about the terminology or how the acts would have been characterized in *Haffner*, which is what we examine above. *Id.* at 966 ("Therefore, *in so far as* [*the rules in* Haffner] *are contrary to the rule herein announced*, they are hereby expressly overruled." (emphasis added)).

writ or any process authorizing him to do so and thus this act was not done in virtue of his public office. *Id.* This was not "the improper exercise of an authority conferred upon him by law, but an arbitrary, wholly unauthorized act on his part." *Id.* Since one cause of action was done in virtue of his public office, the venue statute applied to the whole case and venue was proper only where the cause of action arose.

While the distinction between and use of the terms has been abandoned, Washington courts have followed this early common law meaning of "an act done in virtue of a public office" when determining the proper venue under RCW 4.12.020(2). In *State ex rel. McWhorter v. Superior Court*, 112 Wash. 574, 574-78, 192 P. 903 (1920), we held that McWhorter had acted in virtue of his public office as an agent of the state humane bureau when he charged Charles D. Davis with animal cruelty in King County, and so the suit had to proceed in the county where the cause of action arose. In doing so, this court implicitly applied the common law definition of "in virtue of a public office" by agreeing that an agent of the state humane bureau is authorized to take legal action against animal cruelty as part of his job and even if he does so wrongly or with improper motivations, the act itself is authorized.

Many years later, the Court of Appeals applied this common law meaning of "an act done in virtue of a public office" in *Roy*. Roy alleged various theories of negligence related to a pattern of the police failing to protect her and her daughter

from her daughter's abusive boyfriend. 48 Wn. App. at 370. Applying RCW 4.12.020(2), the Court of Appeals held that the police officers had a right to venue in the county where the cause of action arose because it derived from acts done in virtue of a public office. *Id.* at 371-72. The police officers' job authorized them to stop the boyfriend's harassment of Roy and her daughter by arresting Roy. Roy's claim that the officers failed to use their valid authority to protect her and her daughter involved acts done in virtue of their public office and, so venue was proper where the acts occurred, Snohomish County.[4]

Recently, the court again recognized this definition in *Youker*, which involved a suit against a county and two of its police officers for alleged false arrest, false imprisonment, and malicious prosecution. 162 Wn. App. at 453. The Court of Appeals affirmed the trial court and held that RCW 4.12.020(2) required the suit against the officers to proceed in Douglas County where the arrest that was the subject of the suit occurred. *Id.* at 458. By doing so, the Court of Appeals implicitly recognized that the officers had acted in virtue of their public office when they

---

[4]The court went on to point out that there might still be policy arguments regarding why venue should be changed in the interest of justice. However, those arguments must be postponed and made in front of the court that is determined to have proper venue; they are inapplicable and should not be considered when determining where statutorily dictated venue resides. *Roy v. City of Everett*, 118 Wn.2d 352, 372, 823 P.2d 1084 (1992). Thus, the many policy arguments made by Eubanks are irrelevant at this juncture and should wait to be presented to the court that is determined to have the proper venue.

arrested and imprisoned Youker because they were acting within their authority as police officers.

From the clear definitional parameters of this precedent, we hold that an act done by a public officer in virtue of his or her public office is an act exercising or failing to exercise the authority of the office or performing the authority in an improper manner. The officer's motivations are irrelevant; an officer may act in virtue of his or her public office in a negligent or intentional manner so long as he or she acts with the authority of the office. This definition encompasses suits alleging that an officer has exercised the powers of his or her office for proper or improper motives, as in *Youker* and *Haffner*, and suits where the officer fails to exercise the powers of his or her office, negligently or otherwise, as in *Roy*.

Under this definition, Brown's acts did not occur in virtue of his public office. When considering whether an act is in virtue of one's position, courts focus on the underlying claims in the complaint and whether, if all allegations comprising the claims in the complaint are true, that act would be beyond the authority granted to the public officer. *McWhorter*, 112 Wash. at 575 (claim of malicious prosecution was within the authority of a state humane bureau officer); *Youker*, 162 Wn. App. at 453 (claims of false arrest and false imprisonment were within the authority of the police deputies); *Roy*, 48 Wn. App at 370 (claims of negligence, failure to perform duties under the domestic violence act, denial of equal protection, denial of federal

civil rights, and assault were within the authority of the police officers). Eubanks' claims against Brown are for sexual harassment, negligent or intentional infliction of emotional distress, and negligence. As a deputy prosecuting attorney, Brown has the authority to take all actions to prosecute citizens who have broken the law. He does not have the authority to harass, inflict emotional distress on, or create a hostile working environment for the other people in his office.

Brown argues that because his actions occurred in the workplace, they were automatically done in virtue of his public office. This is not true. He frames this basic argument three ways: (1) because the actions occurred during his employment, they occurred in virtue of his public office; (2) because his actions were taken as part of his supervisory capacity, they were taken in virtue of his public office; and (3) acts that are within the course and scope of employment must also be in virtue of one's public office.[5] We reject this contention that acts occurring in a workplace are necessarily done in virtue of one's public office.

---

[5]Brown argues a venue determination under RCW 4.12.020(2) could preclude a determination regarding whether the official acted in the course and scope of employment. Issue preclusion requires (1) identical issues, (2) a final judgment on the merits, (3) the party estopped must be either a party in the prior proceeding or in privity with a party, and (4) that applying the doctrine will not work an injustice on the party to whom the preclusion will be applied. *Schroeder v. Excelsior Mgmt. Grp., LLC*, 177 Wn.2d 94, 297 P.3d 677 (2013). An act occurring in virtue of a public office is related to but different than an act occurring in the course and scope of employment. Because the different types of acts do not involve identical issues, a venue determination under RCW 4.12.020(2) would not preclude argument about the appropriateness of vicarious liability.

Employment alone is not sufficient to make an act in virtue of a public office. Brown needed to have acted with authority granted to him from his position not just his employment. The same is true for his supervisory role. A supervisory position does not make all of the supervisor's acts automatically in virtue of his public office. Further, acts within the course and scope of employment are not all done in virtue of one's public office. An officer acts in the course and scope of employment if he or she *acts to serve the purposes of his or her employer*—the public. *Robel v. Roundup Corp.*, 148 Wn.2d 35, 53-54, 59 P.3d 611 (2002). An officer acts in virtue of his public office when *acting with authority granted to him because of that position*, regardless of underlying motivations. *Greenius*, 92 Wash. at 403-04.

Brown was a deputy prosecuting attorney. His public office gave him the authority to prosecute. His public office did not give him the authority to harass, inflict emotional distress upon, or create a hostile work environment for his co-workers. This is not a case where a public officer used valid authority for an improper motive. This is a case where a public officer is trying to use his office to justify acts outside his designated authority. Such acts are not "in virtue of" his public office, and thus, RCW 4.12.020(2) does not control venue in this case.

## IV.   CONCLUSION

We hold that because the alleged claims of sexual harassment, negligent or intentional infliction of emotional distress, and negligence were not done in virtue

of his public office, RCW 4.12.020(2) does not entitle Brown to venue in Klickitat County. He does not renew before us his argument that venue is proper in Klickitat County by virtue of his residence. Nor has he at any point argued that venue is proper in Klickitat County because Eubanks' injury occurred there. Consequently, we affirm the trial court and the Court of Appeals. Venue is proper in Clark County Superior Court, and the action should proceed there.

*Eubanks v. Klickitat* County, No. 88021-2

Fairhurst, J.

WE CONCUR:

Stephens, J.

Wiggins, J.

González, J.

P.T.

George/McCloud, J.

*Eubanks, et al. v. Brown, et al.*

No. 88021-2

MADSEN, C.J. (dissenting)—Under RCW 4.12.020(2), a cause of action against a public officer shall be tried in the county where the cause arose if the acts occurred in virtue of his or her office. The issue here is whether venue is proper in Klickitat County where the defendant, Davis Brown, was working as a deputy attorney at the time the alleged acts of sexual harassment and related claims occurred. Brown contends venue is proper in Klickitat County under the statute because the acts in question occurred in virtue of his office. I agree.

## Discussion

The majority makes two analytical mistakes on the way to its conclusion that Mr. Brown's acts did not occur in virtue of his office. The majority distinguishes between acts done "virtute officii," in virtue of office, and those done "colore officii," under color of office.[1] But this distinction ignores our cases to the contrary, and it is inconsistent

---

[1] "Virtute officii" is defined as "[b]y virtue of one's office; by the authority vested in one as the incumbent of a particular office.[] An officer acts *virtute officii* when carrying out some official authority as the incumbent of an office." BLACK'S LAW DICTIONARY 1706 (9th ed. 2009). Early common law distinguished between acts done virtute officii and acts done colore officii. Acts done virtute officii were "those within the authority of the officer, but done in an improper exercise of his authority *or in abuse of the law*," while acts done colore officii were "of such nature the office gives him no authority to do them." *See* 2 JUDICIAL AND STATUTORY DEFINITIONS OF WORDS AND PHRASES 1263-64 (1904) (emphasis added).

with the vast body of authority from other jurisdictions, which explicitly reject this distinction in determining whether an officer's acts were in virtue of his or her office.

The second mistake the majority makes is relying on outdated Idaho case law to conclude that the distinction remains critical in venue determinations. The majority seems to recognize our cases have rejected the distinction. However, it finds compelling *Haffner v. United States Fidelity & Guaranty Co.*, 35 Idaho 517, 520, 207 P. 716 (1922), which addressed similar statutory language. Unfortunately for the majority, *Haffner* was overruled in relevant part and now the sole Idaho support in favor of continuing the distinction in the venue context is the concurring opinion in the overruling case. *Helgeson v. Powell*, 54 Idaho 667, 34 P.2d 957 (1934) (overruling *Haffner* in part); *id.* at 966 (Givens, J., concurring).

RCW 4.12.020(2) has remained essentially unchanged since territorial days. We have a significant line of cases interpreting this statute that reject a distinction between "virtute officii" and "colore officii." But rather than adhere to the "clear definitional parameters of this precedent," the majority reintroduces a distinction long abandoned in modern jurisprudence. Majority at 11. This is not in line with either the cases or the principle of upholding settled law where it is neither harmful nor incorrect. *See, e.g.,* *State v. Barber*, 170 Wn.2d 854, 863, 248 P.3d 494 (2011) ("[t]hese considerations have led us to require 'a clear showing that an established rule is incorrect and harmful before it is abandoned'" (quoting *In re Rights to Waters of Stranger Creek*, 77 Wn.2d 649, 653, 466 P.2d 508 (1970))).

2

When determining venue, we do not reach the merits of the case; rather, we look to the allegations in the complaint only insofar as it is necessary to determine proper venue within the meaning of the statute. *See State ex rel. Hand v. Superior Court*, 191 Wash. 98, 108, 71 P.2d 24 (1937). If a statute includes a term of art, we strive to give it the technical meaning. *Swinomish Indian Tribal Cmty. v. Dep't of Ecology*, 178 Wn.2d 571, 581, 311 P.3d 6 (2013). We also consider relevant Washington case law illuminating the meaning of a statute. *Jongeward v. BNSF Ry.*, 174 Wn.2d 586, 594, 278 P.3d 157 (2012).

Here, we do not write on a clean slate. The court has expressly rejected the early common law distinction. *See Greenius v. Am. Surety Co. of N.Y.*, 92 Wash. 401, 405, 159 P. 384 (1916). In *Greenius*, a constable, acting without reasonable grounds, unlawfully arrested the plaintiffs and, in the process, shot and severely injured one. In determining whether the constable acted in virtue of his office, the court recognized that "[m]uch mental energy had been expended in drawing distinctions" between acts done virtute officii and colore officii. *Id.* at 403. The court reasoned the best argument for rejecting this distinction was the hopeless and interminable confusion of the cases. *Id.* at 404. The court also concluded that it makes no difference whether the officer acted with or without process or warrant: "[h]e is an officer just the same, and his acts, *whether right or wrong*, are in *virtute officii*." *Id.* at 407 (emphasis added).

In defining the meaning of "in virtue of his office," the court committed to the "later and better rule" in line with the "preponderating authority," which held that an act

3

in virtue of one's office includes acts that occur either virtute officii or colore officii. *Id.* at 405 (citing *Lammon v. Feusier*, 111 U.S. 17, 17-21, 4. S. Ct. 286, 28 L. Ed. 337 (1884)). Where an officer engaged in acts "outside of the performance of *any duty* imposed by law," the surety would not be liable. *Id.* at 407 (emphasis added). However, the court explained if the officer had the authority to make an arrest and was officially engaged, his acts, whether right or wrong, lawful or not, were in virtue of his office. *Id.*

In *Jahns v. Clark*, 138 Wash. 288, 244 P. 729 (1926), *Greenius* was reinforced. In *Jahns*, we recognized courts that long before had ceased to view the distinction with much tolerance and again noted that the distinction yields a rule that is neither workable nor sensible. *See Jahns*, 138 Wash. at 294-95. *Jahns* involved a deputy sheriff who wrongfully shot the plaintiff, a minor. The deputy was at the location in search of bootleggers. When the plaintiff's car neared the officer's location, without any cause to believe the occupants guilty of the crime and without any signal to stop them, the deputy fired a sawed-off shotgun into the car, wounding the plaintiff. The defendants argued that because the act was wrongful, it was "not an official one." *Id.* at 294. This court rejected the argument and held "[w]hether the act was one done . . . by virtue of his office or under color of his office, is of no importance, and the court was correct in assuming that the act was an official act." *Id.* at 298.

In another case we held the wrongful acts of military police officers, acting under the guise of authority as Grays Harbor police officers, were not official acts because the military officers had no authority or legal right to act as civilian police officers. *Hand*,

4

191 Wash. at 103-04. Whether the acts were lawful or not is not the critical inquiry, however. Rather, the question is whether the officers had the authority to act. Because the military police officers had no legal authority to act as civilian police officers, their acts were not official acts. *Id.*

Officers acting unlawfully while engaged in the performance of official duties have long been characterized as committing acts in virtue of their office. *See, e.g., State ex rel. McWhorter v. Superior Court*, 112 Wash. 574, 577, 192 P. 103 (1920) (the defendant's acts of malicious prosecution were performed while acting as an agent of the state humane society); *see also Hand*, 191 Wash. at 104 (noting *McWhorter* was acting under color of and in virtue of his office as a public official); *Roy v. City of Everett*, 48 Wn. App. 369, 738 P.2d 1090 (1987) (implicitly recognizing proposition that regardless of whether the officer's acts were lawful or unlawful, if the officer was engaged in the performance of his official duties the acts, as official acts, and venue are proper in the county where the acts occurred; plaintiffs sued the officers, among others, on theories of negligence, equal protection and civil rights violations, and assault).

This is in line with the vast body of authority rejecting the distinction. *See Greenius*, 92 Wash. at 405 ("'[t]he almost uniform current of the later cases, however, regards wrongful acts of a public officer *colore officii* as official acts'" (quoting *Lee v. Charmley*, 20 N.D. 570, 129 N.W. 448, 449 (1910))); *Jahns*, 138 Wash. at 295 (holding "in so far as [*Marquis*] expresses an opinion that the distinction referred to should exist, the case is now finally expressly overruled" (overruling *Marquis v. Willard*, 12 Wash.

528, 41 P. 889 (1895))); *Helgeson*, 34 P.2d at 965 ("we believe that the great weight of authority and the more modern decisions state the better rule—that it is immaterial whether the officer was acting by virtue of his office or under color of office, the surety is bound for his acts" (citing *Jahns*, 138 Wash. at 296-97)); *see also Lammon*, 111 U.S. 17 (recognizing and affirming the authorities rejecting the distinction).

Here, it is that undisputed Mr. Brown worked as a supervising deputy attorney. In this position he had the authority to supervise the plaintiffs. Whether he used his authority properly—or improperly, wrongfully, or unlawfully—his actions were within the ambit of his "supervisory" authority. Under our clear precedent Mr. Brown's actions were in virtue of his office.

But rather than adhere to this well-established and widely supported principle, the majority concludes that Mr. Brown "has the authority to take *all actions* to prosecute citizens who have broken the law. He does not have the authority to harass, inflict emotional distress on, or create a hostile working environment for the other people in his office." Majority at 12 (emphasis added).[2]

But this reasoning does not accord with our precedent. In cases discussed above, it was plain that a police officer has the authority to take all actions to protect and serve

---

[2] Contrary to the majority's assertion that Mr. Brown lacks authority, when addressing the issue of supervisor authority and sexual harassment in the related context of vicarious liability and agency principles, the United States Supreme Court stated, "[i]n the usual case, a supervisor's harassment involves *misuse of actual power*, not the false impression of its existence." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 759, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1988) (emphasis added). It follows that because Mr. Brown's actions stemmed from his "actual power" or authority *as a supervisor*, his actions clearly occurred in virtue of his public office.

but he does not have the right to unlawfully arrest or shoot someone without cause. *Greenius*, 92 Wash. at 402-03; *Jahns*, 138 Wash. at 289. A police officer may not lawfully assault or violate the civil rights of citizens. *Roy*, 48 Wn. App. at 370. An attorney, as the agent of the state, has the authority to take all actions to prosecute citizens for violations of the law, but he or she has no legal right to engage in malicious prosecution. *McWhorter*, 112 Wash. at 574. But each of these cases would have been wrongly decided under the majority's rule defining "official acts" to exclude those done colore officii. Each of the acts at issue, which this court consistently held to be "official," could no longer be so because they do not fall within the majority's constrained definition of acts done in virtue of one's office.

It is hard to understand why the majority rejects this court's sound precedent, only to breathe new life into a doctrine that will once again lead to "interminable confusion" and absurd results. It is necessary only to read the cases to understand why the old rule was unworkable. *See Greenius*, 92 Wash. at 407 (noting 100 years of arguments attempting to fix an arbitrary line of demarcation between acts done virtute officii and colore officii left the cases in disarray). Yet, a century of fanciful arguments, litigation, and confusion has not dissuaded the majority from returning to the old rule and reviving the distinction.

## Conclusion

The majority's holding disregards precedent and reinstates an antiquated distinction between acts done virtute officii and colore officii—a test that was

7

unworkable and senseless at common law and remains so today. I would uphold this court's well-reasoned precedent and conclude that Mr. Brown's acts were official acts. Because he was a supervising deputy attorney, he necessarily had the authority and the power to exercise his supervisory duties, whether he did so improperly or unlawfully. Under RCW 4.12.020(2), venue should be proper in Klickitat County.

I dissent.

No. 88021-2

Madsen, C.J. (dissenting)

Madsen, C.J.