FILED
COURT OF APPEALS
DIVISION II

2015 AUG 11 AM 9: 08

STATE OF WASHINGTON

BY_____
            DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| LARRY DALE CHRISTENSEN, | No. 44340-6-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| JENNIFER ROACH, | |
| Appellant. | |

BJORGEN, J. — Jennifer Roach appeals a vulnerable adult protection order restraining her from contacting Larry Christensen. Roach contends that (1) venue was improper because the petition for the order of protection was not filed in the county she and Christensen both lived in, (2) she was deprived of her jury trial right because the trial court adjudicated the petition without a jury, (3) she was deprived of due process of law because the trial court did not allow her to testify or cross-examine the witnesses against her, (4) the person filing the petition, Richard Sutherland, was disqualified from acting as Christensen's attorney-in-fact based on a conflict of interest, (5) the trial court failed to enter findings of fact and conclusions of law, and (6) the trial court made factual findings unsupported by substantial evidence.

We hold that Roach (1) waived her venue claim by failing to object or move to transfer venue, (2) was not entitled to a jury trial because the hearing on the petition was an equitable proceeding, (3) was not denied due process because the trial court never prevented her from testifying or cross-examining witnesses against her, and (4) waived her claim that Sutherland was tainted by a conflict of interest by failing to raise it in the trial court or adequately brief the issue before us. We also hold that (5) the trial court made the necessary findings of fact and conclusions of law and (6) that these findings are supported by substantial evidence. We affirm.

## FACTS

In 1996, Christensen executed a durable power of attorney naming Sutherland "as his attorney-in-fact" should he later become "disabled or incompetent." Clerk's Papers (CP) at 7. In April 2012, Christensen executed a living trust, naming himself the trust's original trustee and Sutherland as his successor trustee in the event of his incapacity or death. The trust granted three people, Loretta Sutherland, Jessica Sutherland, and Roach, the power to determine whether Christensen had become incapacitated. Under the trust, "all rights to . . . income, profits, and control of the trust property" remained with Christensen until his death, CP at 27, at which time all interest in the trust's property passed, in succession, to Sutherland and then to members of his family.

By 2009, Christensen was showing signs of Parkinson's disease. Roach began working for Christensen near the end of that year, "cleaning and organizing his house" for $100 a day. CP at 213. Over the next few months, Roach became something of a personal assistant to Christensen before eventually moving into his house to become his "full time companion." CP at 213.

Roach and Christensen discovered research indicating that exercise benefitted those suffering from Parkinson's disease. Roach considered getting Christensen to exercise as one of her duties, and some of Christensen's friends and neighbors opined that he benefitted from Roach's physical therapy regime. In the summer of 2012, Christensen remained well enough that he took a two week vacation through Scandinavia with Roach and one of her friends.

By late September 2012, Roach and Christensen had returned to the United States. On September 24, 2012, Christensen tripped over a box lying on one of the steps in his house and fell, suffering injuries that required hospitalization. During this hospitalization, Roach used Christensen's automated teller machine (ATM) card to withdraw, over several days, nearly $2,500 from his accounts.

Christensen was discharged from the hospital on October 3, 2012. Shortly thereafter, Christensen and Roach left Christensen's house in King County and temporarily moved into Sutherland's Kitsap County house. Two weeks after moving in with Sutherland, Christensen again required hospitalization. Doctors later said that the need for hospitalization may have resulted from lack of sleep and exhaustion from over-exercise.

On the whole, Christensen and Roach's stay with the Sutherlands was marked by tension and strife. Despite Roach's repeated statements of affection for Christensen, at least three people heard Roach yelling at Christensen during the stay. One of these witnesses testified that she heard Roach yelling at Christensen on no less than four occasions and believed that on one of those occasions she heard a slap.

When Sutherland and his wife, Christensen's nephew and his wife, and Roach began to plan for how to care for Christensen after his second hospitalization, a serious conflict erupted between Roach and the others. They confronted Roach over the large ATM withdrawals she had

3

made from Christensen's accounts during his hospitalization. Roach began crying and yelling at the others, telling Christensen that "she was being attacked," which upset him. CP at 82. When talk turned to the costs of Roach and Christensen's trip to Scandinavia, Christensen "spoke up and said [he] agreed to pay half of all expense[s]." CP at 82. Roach responded by repeatedly telling Christensen "you said you would pay for all expenses on the trip[,] remember?" CP at 82. The meeting ended, for the night, with Roach "screaming at [Christensen,] saying she love[d] him and that [the others were] attacking her and making her leave." CP at 83. When the meeting resumed the next morning, Sutherland decided that the situation was untenable and told Roach that she needed to leave his home by the end of the day. Roach responded by "immediately . . . crying and screaming repeatedly" at Christensen that she loved him and that the others were forcing her to leave him. CP at 83. She also told Christensen that "this has happened before and that the girlfriend gets nothing." CP at 83. When Christensen tried to comfort her, Roach "shuffled him into the bedroom." CP at 83. He returned, immediately "asking questions about his [w]ill and who was in charge." CP at 83. The others took this incident as evidence of Roach's manipulation of Christensen.

Sutherland and Christensen's nephew then left to go to Christensen's house in King County, where they retrieved belongings that he needed during his stay with the Sutherlands. While there, the two men noticed the house's unsanitary conditions, including leaking and molding skylights, filthy and malodorous conditions in the master bathroom, clutter throughout the house, and rodent feces and garbage in the kitchen.

On November 2, 2012, Sutherland filed a petition for a vulnerable adult protection order in Kitsap County seeking to restrain Roach from interacting with Christensen. Sutherland filed the petition, in part, as Christensen's attorney-in-fact and as the trustee of Christensen's living

4

trust, making him Christensen's fiduciary.[1] In the petition, Sutherland, under oath, listed a number of Roach's acts that he contended showed abuse, neglect, and financial exploitation. These included Roach's demands that Christensen exercise excessively; her withdrawal of large amounts of cash from Christensen's bank accounts during one of his hospital stays; her travel using Christensen's funds; her failure to remove the clutter from Christensen's house; her failure to keep the house sanitary; and her emotional abuse of Christensen, evidenced by her yelling at him and use of professions of love and other forms of emotional manipulation to bend Christensen to her wishes.

The parties appeared for an evidentiary hearing on the petition on November 30, 2012. The trial court announced that "ordinarily, these are proceedings that are done without testimony. I do rely on the pleadings, and I have reviewed the pleadings in their entirety." Verbatim Report of Proceedings (VRP) (Nov. 30, 2012) at 3. The parties then presented their cases.

Sutherland mentioned incidents that he believed showed Roach's financial exploitation, emotional abuse, and neglect of Christensen, citing the evidence he had submitted. This evidence included documents showing that (1) Christensen's bank accounts had been heavily drawn on beginning in the late summer 2012 and that Roach had withdrawn money using his ATM cards while he was hospitalized; (2) that Roach had verbally abused Christensen or engaged in emotional manipulation; and (3) that Roach had over-exercised Christensen and failed to ensure safe and sanitary living conditions for him.

Roach noted that all of Sutherland's supporting evidence consisted of unsworn hearsay and contended, based on evidence she had submitted, that she had cared for Christensen

---

[1] In early November, 2012, Loretta and Jessica had exercised their powers to declare Christensen incompetent, making Sutherland the trustee of the trust.

appropriately. In support she had offered evidence that (1) exercise was an appropriate treatment for Parkinson's disease, (2) Christensen's doctors appear to have approved of her care, and (3) some people believed that she had cared for him well; she also offered heavily redacted financial records that she contended showed no financial exploitation.

In an oral ruling, the trial court found Roach had committed acts of financial exploitation, neglect, and emotional abuse.

The finding of financial exploitation was based on three pieces of evidence: Christensen's uncharacteristic bank account withdrawals in the six months before the protection order hearing; Roach's agreement to work for $100 a day, which the trial court believed to be out-of-line with caregiver salaries in the area and which was financially unsustainable for Christensen; and Roach's use of Christensen's ATM card to withdraw money. While making its finding of financial exploitation, the trial court found all of the financial evidence Roach offered lacking in credibility.

The finding of neglect was based on three pieces of evidence: Roach's failure, despite being Christensen's caregiver, to keep his house clean and orderly, including failing to keep his stairs free of tripping hazards, which led to his fall and hospitalization; Roach's withholding of medicine from Christensen; and Roach's over-exercising of Christensen.

The finding of emotional abuse was based on two pieces of evidence: Sutherland's evidence that Roach had yelled at Christensen in an abusive manner and the trial court's personal observation of how Roach's crying upset Christensen.

The trial court entered a written order stating that "[t]he [c]ourt [f]inds [b]ased [u]pon the [c]ourt [r]ecord . . . [that] Respondent committed acts of abandonment, abuse, neglect, and/or financial exploitation of the vulnerable adult." CP at 374. Accordingly, the court granted the

relief sought in the petition, including restraining Roach from nearing or contacting Christensen, approaching his home, committing or threatening to commit various acts of abuse, neglect, financial exploitation, or physical harm against Christensen, and requiring her to account for any and all money that she had received from him.

Roach appeals.

## ANALYSIS

### I. VENUE

Roach contends that venue was improper in Kitsap County because she and Christensen reside in King County. Christensen contends that Roach waived the issue.[2] Christensen is correct.

In Washington, venue is controlled by statute. *Eubanks v. Brown*, 180 Wn.2d 590, 595, 327 P.3d 635 (2014). The plaintiff in an action possesses the initial right to choose venue. *Eubanks*, 180 Wn.2d at 595. If the plaintiff fails to select a proper venue, the defendant may object or request a transfer to a proper venue. *Eubanks*, 180 Wn.2d at 595. A defendant who fails to take one of those two steps waives any claim of venue-related error. *Eubanks*, 180 Wn.2d at 595.

In the trial court, Roach did not object to the Kitsap County proceedings or move to change venue. By failing to do so, she waived any claim of error. *Eubanks*, 180 Wn.2d at 595.

### II. TRIAL BY JURY

Roach claims that the proceedings in the trial court infringed on her right to trial by jury. Christensen argues that Roach had no constitutional right to trial by jury because of the equitable nature of the proceeding. We agree with Christensen.

---

[2] Christensen makes these arguments through his guardians.

The right to a jury trial in civil proceedings is guaranteed by article I, section 21 of the Washington Constitution, which states that "[t]he right of a trial by jury shall remain inviolate." We interpret the provisions of article I, section 21 by looking "to the right as it existed at the time of the constitution's adoption in 1889." *Sofie v. Fibreboard Corp.*, 112 Wn.2d 636, 645, 771 P.2d 711, 780 P.2d 260 (1989). At that time, the right to trial by jury did not attach to purely equitable matters. *Brown v. Safeway Stores, Inc.*, 94 Wn.2d 359, 365, 617 P.2d 704 (1980). To determine whether a claim is purely equitable, we consider, among other things, the issues involved and the type of relief sought. *Auburn Mech., Inc. v. Lydig Constr., Inc.*, 89 Wn. App. 893, 899, 951 P.2d 311 (1998) (quoting *Brown*, 94 Wn.2d at 368 (quoting *Scavenius v. Manchester Port Dist.*, 2 Wn. App. 126, 129-30, 467 P.2d 372 (1970)); *Chauffers, Teamsters, & Helpers Local No. 391 v. Terry*, 494 U.S. 558, 565, 110 S. Ct. 1339, 108 L. Ed. 2d 519 (1990).

Roach had no right to a jury trial in these proceedings. An order of protection is a form of injunction. *Blackmon v. Blackmon*, 155 Wn. App. 715, 721, 230 P.3d 233 (2010). Because injunctions are "distinctly an equitable remedy . . . 'frequently termed the strong arm of equity,'" *Kucera v. Department of Transportation*, 140 Wn.2d 200, 209, 995 P.2d 63 (2000), a proceeding "for an injunction is an equitable proceeding." *Tradewell Stores, Inc. v. T.B. & M., Inc.*, 7 Wn. App. 424, 427-28, 500 P.2d 1290 (1972). Consequently, this was the type of equitable proceeding to which the jury trial right does not attach. *See Brown*, 94 Wn.2d at 365.

### III. Due Process

Roach also contends that the trial court violated her right to due process by (1) failing to offer her the opportunity to cross-examine[3] the witnesses against her and (2) failing to offer her the chance to testify on her behalf. We disagree.

Both the state and federal constitutions protect against state deprivation of "life, liberty, or property, without due process of law." UNITED STATES CONST. amend. XIV, § 1; WASHINGTON CONST. art. I, § 3. Due process is a flexible concept and the protections it requires vary based on specific circumstances. *Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) (quoting *Morrisey v. Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972)).

The trial court did not deprive Roach of the opportunity to present testimony and cross-examine witnesses. The basis of Roach's due process claim is the trial court's statement that "*ordinarily*, these are proceedings that are done without testimony." VRP (Nov. 30, 2012) at 3 (emphasis added). That statement does not foreclose Roach's ability to present live testimony or cross-examine Sutherland. Roach simply never asked the trial court to allow her to do so. *Cf. In re Marriage of Rideout*, 150 Wn.2d 337, 352, 77 P.3d 1174 (2003) (appellant had the opportunity to present live testimony, with consequent cross-examination, but failed to request to do so). Having failed to assert her rights, Roach cannot now complain that she was deprived of due process. *See Yakus v. United States*, 321 U.S. 414, 444, 64 S. Ct. 660, 88 L. Ed. 834 (1944) ("No procedural principle is more familiar to this Court than that a constitutional right may be

---

[3] On the cross examination issue, see also *Gourley v. Gourley*, 158 Wn.2d 460, 467, 145 P.3d 1185 (2006).

forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it."); *see State v. Gunkel*, 188 Wash. 528, 534-35, 63 P.2d 376 (1936)) (party must timely assert constitutional rights or forfeit them).

## IV. CONFLICT OF INTEREST

Roach next contends that Sutherland had a conflict of interest created by his serving as both Christensen's attorney-in-fact and the trustee of Christensen's living trust. Avoiding this situation, Roach argues, requires that Sutherland not act as Christensen's attorney-in-fact. Christensen argues that Roach waived this claim of error by failing to properly raise it in the trial court or cite authority in support of it. Christensen is correct.

Generally a person may not raise an issue on appeal not raised before the trial court. *Smith v. Shannon*, 100 Wn.2d 26, 37, 666 P.2d 351 (1983); RAP 2.5(a). This rule serves principles of equity and judicial economy. *Smith*, 100 Wn.2d at 37. Chapter 11.94 RCW, which governs the powers and duties of an attorney-in-fact, has specific provisions that authorize interested persons to petition the court to terminate a power of attorney or to restrict its exercise. RCW 11.94.090. Roach did not avail herself of these provisions or otherwise request relief based on the claimed conflict of interest in the trial court. We decline to consider her claim of error for the first time on appeal.

Further, Roach's briefing on the issue fails to comport with the rules governing appeals to this court. RAP 10.3(a)(6) requires appellants to offer argument with citations to supporting legal authority. Roach has failed to offer such support and has waived any claim of error related to her conflict of interest argument. *See Brownfield v. City of Yakima*, 178 Wn. App. 850, 876, 316 P.3d 520 (2013).

## V. FINDINGS AND CONCLUSIONS

Roach next contends that the trial court erred by not entering findings of fact and conclusions of law that would enable appellate review. Christensen argues that the order itself contained the necessary finding and conclusion. Again, we agree with Christensen.

Division One of this court has succinctly summarized both the purposes and necessary content of findings of fact:

> The basic purpose and requirements of findings of fact can be summarized: (1) in a case tried to the court, the trial court must make findings of ultimate fact concerning all of the material issues; (2) the trial court is not required to make findings in regard to every item of evidence introduced in a case; (3) the purpose of findings is to enable an appellate court to review the questions raised on appeal, and (4) when it clearly appears what questions were decided by the trial court and the manner in which they were decided, the requirements for findings have been met.

*Ford v. Bellingham-Whatcom County Dist. Bd. of Health*, 16 Wn. App. 709, 717, 558 P.2d 821 (1977) (citing CR 52; *Bowman v. Webster*, 42 Wn.2d 129, 133, 253 P.2d 934 (1953); *Wold v. Wold*, 7 Wn. App. 872, 875, 503 P.2d 118 (1972)).

The finding in the protection order is sufficient under that standard. The trial court found that Roach had "committed acts of abandonment, abuse, neglect, and/or financial exploitation." CP at 374. Although greater detail would be preferable, that finding meets the essential requirements of findings set out in *Ford*, above. 16 Wn. App. at 717. The order also contains the trial court's legal conclusion, which flows directly from its finding, that "as a matter of law . . . relief . . . shall be granted." CP at 374. There was no error in entering insufficient findings and conclusions.

Roach appears also to contend that the trial court erred by not entering findings with regard to each piece of evidence the parties offered at the hearing. As noted, the *Ford* court held

that "the trial court is not required to make findings in regard to every item of evidence introduced in a case." 16 Wn. App. at 717. Thus, the trial court had no duty to do what Roach demands.

## VI. SUBSTANTIAL EVIDENCE

Roach also contends that (1) substantial evidence does not support the trial court's finding of financial abuse because no evidence, other than the trial court's own experience, supports its finding that Roach's daily rate for giving care was exorbitant and (2) substantial evidence does not support the trial court's finding of neglect because Christensen's evidence consisted of unsworn hearsay. We hold that substantial evidence supports the trial court's findings and that the trial court did not err by relying on unsworn hearsay, based on explicit provisions in the rules of evidence.

We review the factual findings made by the trial court in a vulnerable adult protection order proceeding for substantial evidence. *In re Pers. Restraint of Knight*, 178 Wn. App. 929, 936, 817 P.3d 1068 (2014). Because there is a heightened burden of proof in these proceedings, the petitioner must marshal evidence that, in the light most favorable to him or her, allows us to determine that a fact finder could find the necessary facts by clear, cogent, and convincing evidence. *In re Dependency of C.B.*, 61 Wn. App. 280, 282-86, 810 P.2d 518 (1991); *Knight*, 178 Wn. App. at 937. We defer to the trial court's determinations about "the persuasiveness of the evidence, witness credibility, and conflicting testimony." *Knight*, 178 Wn. App. at 937. Consequently, when reviewing a claim that a trial court's findings are not supported by substantial evidence, we "need only consider [the] evidence favorable to the prevailing party." *Endicott v. Saul*, 142 Wn. App. 899, 909, 176 P.3d 560 (2008).

A procedural matter complicates Roach's first allegation of error. Roach argues that substantial evidence does not support the finding of financial abuse because the only evidence supporting it is the trial court's own experience about caregiver rates. The trial court's statement about those rates, however, was made in its oral ruling, and a party may not assign error to the trial court's oral ruling. *El Cerrito, Inc. v. Ryndak*, 60 Wn.2d 847, 857, 376 P.2d 528 (1962). Given that legal principle, we simply treat Roach's challenge as one to the trial court's finding that she committed acts of financial exploitation, the finding contained in the order of protection.[4]

We hold that substantial evidence supports the trial court's finding of financial exploitation. "'[F]inancial exploitation' means the illegal or improper use, control over, or withholding of the property, income, resources, or trust funds of the vulnerable adult by any person or entity for any person's or entity's profit or advantage other than for the vulnerable adult's profit or advantage." RCW 74.34.020(7). Financial exploitation includes

> [t]he use of deception, intimidation, or undue influence by a person or entity in a position of trust and confidence with a vulnerable adult to obtain or use the property, income, resources, or trust funds of the vulnerable adult for the benefit of a person or entity other than the vulnerable adult.

RCW 74.34.020(7)(a). Whether or not the trial court erred by finding that $100 per day was excessive, the record contains evidence that Roach used Christensen's ATM card to withdraw money while he was in the hospital and used undue influence to get him to support her claim that he had agreed to pay the entirety of her Scandinavian vacation. From that evidence, the trial court could reasonably find financial exploitation.

---

[4] The use of "and/or" in the finding in the order of protection leaves it ambiguous as to whether the trial court found financial abuse, but that ambiguity can be resolved by turning to the trial court's oral ruling, *State v. Hescock*, 98 Wn. App. 600, 606, 989 P.2d 1251 (1999), which made clear that it did.

We also hold that substantial evidence supports the trial court's finding of neglect. Under RCW 74.34.020(12)(a),

> '[n]eglect' means . . . a pattern of conduct or inaction by a person or entity with a duty of care that fails to provide the goods and services that maintain physical or mental health of a vulnerable adult, or that fails to avoid or prevent physical or mental harm or pain to a vulnerable adult.

By Roach's own admission, she served as Christensen's caretaker and therefore bore a duty of care. Despite this duty, she failed to ensure a sanitary and safe living environment. Sutherland and Christensen's nephew found filthy conditions inside Christensen's house, and Roach failed to remove the clutter on Christensen's stairs, which eventually led to his tripping and falling. Evidence also indicates that Roach was responsible for Christensen's October 2013 hospitalization by forcing him to over-exercise, although there is also evidence to the contrary. Substantial evidence supports the trial court's finding of neglect.

Further, even if we held that the trial court erred by finding both financial abuse and neglect, chapter 74.34 RCW creates a cause of action for, disjunctively, "cases of abandonment, abuse, financial exploitation, *or* neglect." RCW 74.34.110(1) (emphasis added). Roach has not challenged the trial court's finding that she committed emotional abuse, making it a verity on appeal.[5] We affirm the protection order based on that finding by itself.

Roach next contends that the trial court erred by making its findings on unsworn hearsay evidence. ER 603 requires witnesses to testify under oath. ER 801(c) defines "hearsay" as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 802 makes hearsay statements

---

[5] Again, the written order is ambiguous as to whether it found neglect or abuse, but the trial court's oral ruling makes clear that it did.

14

inadmissible subject to exceptions made by court rule or statute. There is no requirement, however, that a trial court apply these evidentiary rules in proceedings under chapter 74.34 RCW. ER 1101(c)(4). The trial court was free to credit and use Sutherland's evidence regardless of whether it was unsworn or hearsay. There was no error.

## CONCLUSION

We rule against Roach on her claims of error and affirm the trial court's entry of the order of protection.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJORGEN, J.

We concur:

JOHANSON, C.J.

MELNICK, J.