[No. 29165-1-III.   Division Three.   April 19, 2011.]

JASON YOUKER, *Appellant*, v. DOUGLAS COUNTY ET AL., *Respondents*.

452

*Julie A. Anderson*, for appellant.

*Stanley A. Bastian* (of *Jeffers Danielson Sonn & Aylward PS*), for respondents.

¶1 SIDDOWAY, J. — Jason Youker appeals the summary judgment dismissal of his malicious prosecution, false arrest, and related claims against Douglas County and two of its deputies arising out of a search, arrest, and ultimately-terminated prosecution. We agree that the malicious prosecution, false arrest, and false imprisonment claims were properly dismissed, and that the prosecutor's informed decision to charge Mr. Youker broke the causal chain to most of the elements of Mr. Youker's claimed damages. We find that the basis for dismissing Mr. Youker's invasion of privacy claim, at least with respect to damages directly related to the search, was insufficiently briefed below and on appeal and therefore reverse and remand with respect to that claim for briefing and reargument.

## FACTS AND PROCEDURAL BACKGROUND

¶2 On April 20, 2007, Jason Youker's ex-wife, JoAnn Youker, visited the Douglas County Sheriff's Office and notified the dispatch office that she wished to provide information on a crime committed by her ex-husband. The dispatch office relayed notice of Ms. Youker's visit to Deputy Lisa White, who was next on rotation and would be assigned the matter but who was out on patrol, and Deputy William Black, who was in the deputies' room. The dispatch office simultaneously ran a check on Ms. Youker and transmitted information to both deputies that Ms. Youker was subject to a no-contact order prohibiting her from having contact with her ex-husband and was subject to an outstanding arrest warrant out of East Wenatchee for "[f]ail to appear or fail to comply." Clerk's Papers (CP) at 164. Deputy White read the information on the computer screen in her patrol car and returned to the sheriff's office to meet with Ms. Youker.

¶3 Deputy Black reviewed the information on the arrest warrant and no-contact order and met with Ms. Youker briefly while awaiting Deputy White's return from patrol. He was told by Ms. Youker that her ex-husband was a

convicted felon and was in possession of a rifle, which she knew was forbidden. On Deputy White's arrival, Ms. Youker repeated the allegation to her, telling the deputy that she had asked her husband to get rid of the rifle several times because there were children in the house, but he refused. Ms. Youker offered to show the officers where the rifle was hidden in the residence she claimed to share with Mr. Youker on Nancy Street in East Wenatchee. She told them that she and Mr. Youker had lived together at the Nancy Street residence for the prior five months. As these conversations were taking place, the dispatch office generated a report of its contact from Ms. Youker that indicated a different, Tonasket address for Ms. Youker. The report could have been accessed by the deputies, but there is no evidence that they ever did access or become aware of the reported Tonasket address prior to traveling to Mr. Youker's home with Ms. Youker.

¶4 After confirming that Mr. Youker was a convicted felon, the deputies drove Ms. Youker to the residence. The deputies had been told by Ms. Youker that Mr. Youker had gone to Spokane for the day and would not be present at the home, and he was not. Deputy White asked Ms. Youker if she had a key to the home and Ms. Youker said she did not, but that the home was unlocked.

¶5 Relying on Ms. Youker's consent to search the home, the deputies entered and were directed by Ms. Youker to a 30-30 rifle and ammunition located under a bed. While inside the residence, Deputy White was shown mail addressed to Mr. Youker and Ms. Youker as well as Ms. Youker's clothing in a closet. Ms. Youker signed a consent to search form.

¶6 Upon returning to the sheriff's office, Deputy White learned that the nature of Ms. Youker's outstanding arrest warrant was a violation of a domestic violence protective order in favor of Mr. Youker. Deputy White arrested Ms. Youker on the warrant.

¶7 That afternoon, Deputy White also completed a notice of arrest and probable cause statement for the arrest of

Jason Youker and completed a handwritten incident report, which identified an address other than the Nancy Street address as a "mailing address" for Ms. Youker. CP at 72. The next day, Deputy White obtained signed statements from Ms. Youker's two minor children, one being her son with Mr. Youker, corroborating Mr. Youker's ownership of the rifle.

¶8 Deputy White also pulled over and arrested Mr. Youker the next day. When the deputy advised him that he was under arrest for being a felon in possession of a firearm, Mr. Youker asked her "what gun[?]" and she responded that it was the rifle under his bed. CP at 56. According to Deputy White's report, Mr. Youker stated that the rifle belonged to Ms. Youker, who brought it with her when she moved in with her son. The deputy's report also indicates that Mr. Youker told her, when asked, that he and his ex-wife had lived together at the residence for about four months. En route to the jail, Mr. Youker accused Ms. Youker of setting him up and placing the gun under the bed; he said the gun had been in storage and she must have gotten it out of storage while he was in Spokane. CP at 56.

¶9 On April 23, 2007, Mr. Youker made his initial appearance in court. The court determined that probable cause for the arrest existed based upon the evidence before it, which included Deputy White's original notice of arrest and probable cause statement. The information provided in the probable cause statement as to Ms. Youker's addresses and the no-contact order was limited to the following:

> I confirmed that Jason Youker was a convicted felon. JoAnn advised me that they have lived together at this residence for approximately 5 months. JoAnn was not aware that the no contact order was still in [e]ffect.

CP at 52.

¶10 Based upon the materials provided to the Douglas County prosecutor's office by the sheriff's office, the prosecutor decided to file charges against Mr. Youker, and on April 25, 2007, an information was filed with the superior court charging Mr. Youker with unlawful possession of a

firearm in the first degree, a felony. CP at 90-91; RCW 9.41.040. The materials provided to the prosecutor's office by Deputy White included all of the witness statements, the arrest warrant for Ms. Youker, and the incident and dispatch-generated reports identifying other addresses for Ms. Youker.

¶11 The charges against Mr. Youker were dismissed by Douglas County on August 6 because the United States Attorney's Office had elected to pursue a federal charge against Mr. Youker based upon the same incident.

¶12 Mr. Youker moved in the federal proceeding to suppress evidence of the rifle and ammunition. The district court heard evidence on October 26, 2007, and scheduled argument on the suppression motion for a later date. Prior to the date for argument, the assistant United States attorney assigned to the case learned of witnesses whose testimony would contradict the government's key witness and determined that if believed, their testimony could raise a reasonable doubt as to Mr. Youker's guilt. The government filed a motion to dismiss the indictment without prejudice on February 21, 2008.

¶13 Mr. Youker commenced this action against Douglas County and Deputies Black and White on April 17, 2009, in Chelan County Superior Court. The court granted a motion to transfer the case to Douglas County over Mr. Youker's objection.

¶14 Following the transfer to Douglas County, the defendants moved for summary judgment. The trial court granted the motion.

¶15 Mr. Youker filed a motion for reconsideration and submitted further declarations from himself and Ms. Youker, attesting that he had allowed her to stay with him for only several weeks in December 2006, a time when she and his son were otherwise homeless; that he insisted that she leave at the end of December, at which point she moved to her parents' home in Tonasket; that in late March 2007 she learned that Mr. Youker was in a new relationship and

began following him, a violation of the no-contact order that he reported; that on the day the home was searched, she had taken her rifle and ammunition to Mr. Youker's home, which she knew would be unlocked because his employees needed access to inventory at his home; and that she placed the rifle and ammunition under his bed and then went to the Douglas County sheriff to file the criminal complaint.

¶16 The defendants opposed the motion for reconsideration on the merits and on grounds it was untimely. The trial court denied the motion. Mr. Youker appeals both the transfer of venue and the dismissal of his claims.

## ANALYSIS

### I

¶17 Mr. Youker commenced his action in Chelan County in reliance on RCW 36.01.050(1), which provides that actions against a county "may be commenced in the superior court of such county, or in the superior court of either of the two nearest judicial districts." The purpose of the statute is to alleviate concerns of hometown bias when suing counties. *See Cossel v. Skagit County*, 119 Wn.2d 434, 438, 834 P.2d 609 (1992), *overruled on other grounds by Shoop v. Kittitas County*, 149 Wn.2d 29, 65 P.3d 1194 (2003).

¶18 In answering, the county and the deputies (whose submissions have been joint and, for convenience, will hereafter be referred to collectively as the County) denied that venue was proper and simultaneously moved to transfer venue to Douglas County, relying on RCW 4.12.020, which provides in part that

[a]ctions for the following causes shall be tried in the county where the cause, or some part thereof, arose:

. . . .

(2) Against a public officer, or person specially appointed to exercise his or her duties.

Mr. Youker assigns error to the order granting the motion and transferring venue to Douglas County.

■ ¶19 We review a trial court's grant of a motion to transfer venue for abuse of discretion. *Hatley v. Saberhagen Holdings, Inc.*, 118 Wn. App. 485, 488, 76 P.3d 255 (2003).

¶20 According to courtroom minutes, the Chelan court granted the motion to change venue to Douglas County because RCW 36.01.050 provided for three acceptable venues in which to sue the county, while RCW 4.12.020 specified that with respect to the officers, venue was proper only in Douglas County. From this, the court reasoned that the only proper county in which to sue all three defendants was Douglas County.

¶21 Mr. Youker points to two cases that he contends support his prerogative to sue both the county and the deputies in Chelan County. First, he cites *Shoop*, 149 Wn.2d 29, in which the plaintiff sued Kittitas County and several unnamed defendants in King County shortly before the statute of limitations on her claims expired. This proved to be error even with respect to the claim against Kittitas County because King County was not one of the two "nearest" counties as defined in RCW 36.01.050. *Id.* at 32. The plaintiff moved for a transfer to Yakima County to cure the problem. *Id.* But Kittitas County argued that RCW 36.01.050 was jurisdictional, meaning that King County could only dismiss the case, which would effectively end the now time-barred matter. *Id.* The Supreme Court held that the statute pertained to venue, not subject matter jurisdiction, and affirmed the Court of Appeals' decision to remand. *Id.* at 37-38.

¶22 It is the directive on remand in *Shoop* that Mr. Youker argues bears on our venue issue. He argues that the Supreme Court directed that the case be transferred to Yakima County rather than Kittitas County, implicitly endorsing a plaintiff's option to elect an adjacent-county venue anytime a county is a party. Contrary to Mr. Youker's assertion, however, the Court of Appeals in *Shoop* directed venue to be transferred "to a *proper county* under the change of venue statute," *Shoop v. Kittitas County*, 108 Wn. App. 388, 389, 30 P.3d 529 (2001) (emphasis added), and the

Supreme Court affirmed. 149 Wn.2d at 38. The *Shoop* decisions tell us nothing about the venue of a case against both a county and public officers, assuming the issue was even present.

¶23 Mr. Youker also relies on *Cossel*, 119 Wn.2d 434, for the proposition that a plaintiff may bring suit in an adjacent county when it sues both a county and its officers. But *Cossel*'s reasoning appears to have been premised on its conclusion, later reversed, that the statutes in question pertained to jurisdiction rather than venue. *Id.* at 436-37. More importantly, the court in *Cossel* was forced to resolve an actual conflict between former RCW 4.12.020(3) (1941), mandating venue within the county on the facts of the case, and RCW 36.01.050, permitting suit in an adjacent county. *Id.* at 435. So *Cossel* does not shed light on proper venue here.

¶24 This case most closely resembles *Roy v. City of Everett*, 48 Wn. App. 369, 370, 738 P.2d 1090 (1987), in which the plaintiff brought suit in King County against Snohomish County and five Everett police officers, and the trial court denied the officers' motion to transfer venue to Snohomish County. The *Roy* court held that the officers had a right under RCW 4.12.020(2) to have the action commenced against them in Snohomish County and the plaintiff had no right to sue them in King County. *Id.* at 371-72. It also rejected the plaintiff's argument that because venue was proper as to the county defendant in King County, the officers could be sued there as well. *Id.* at 372-73. The case was remanded with directions to grant the officers' motion for a change of venue. *Id.*

■ ■ ¶25 We do not find any conflict between RCW 4.12.020 and RCW 36.01.050. RCW 4.12.020(2) provides that proper venue for the claims against the officers is the county where the cause, or some part thereof, arose—a venue the officers have the right to enforce. RCW 36.01.050 gives a plaintiff the right to sue the county in the county, or, if it prefers, in either of the two nearest judicial districts. Because objection to improper venue can be waived, a

plaintiff suing both a county and its officers can commence its action in an adjacent county and see if the officers accede to its choice. If the officers move to transfer the case to the county in which the events occurred, they face the possibility that only the claims against them—not the claims against the county—will be transferred.

¶26 The Chelan court properly transferred Mr. Youker's claims against the officers to Douglas County but offered no justification for transferring Mr. Youker's claim against the county itself. Mr. Youker does not assign error to the Chelan court's failure to give him the option of pursuing his claims against different defendants in different forums, and it would be too late to raise that objection now. In *Lincoln v. Transamerica Investment Corp.*, 89 Wn.2d 571, 578, 573 P.2d 1316 (1978), the court explained that if a plaintiff objects to a venue decision,

> [the plaintiff's] proper remedy [is] to seek [discretionary review] and not to wait until the trial [is] concluded and then ask an appellate court to set aside an unfavorable judgment on the basis that the venue was laid in the wrong county. If the latter course is followed, it is incumbent upon an appellant to show that he was prejudiced by the denial of a change of venue; otherwise a new trial will not be granted.

(Footnote omitted.) *Accord Geroux v. Fleck*, 33 Wn. App. 424, 427-28, 655 P.2d 254 (1982), *review denied*, 99 Wn.2d 1003 (1983); *Hauge v. Corvin*, 23 Wn. App. 913, 915-16, 599 P.2d 23 (1979). The court in *Lincoln* noted that plaintiffs tend to have difficulty demonstrating prejudice because " 'except in rare instances, the mills of justice grind with equal fineness in every county in the state.' " 89 Wn.2d at 578 (quoting *Russell v. Marenakos Logging Co.*, 61 Wn.2d 761, 765, 380 P.2d 744 (1963)).

## II

¶27 Mr. Youker next argues that the trial court erred in granting summary judgment in favor of the County on his four causes of action: malicious prosecution, false arrest, false imprisonment, and invasion of privacy.

¶28 Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). We review a summary judgment order de novo, viewing the evidence and all reasonable inferences from the evidence in the light most favorable to the nonmoving party. *Schaaf v. Highfield*, 127 Wn.2d 17, 21, 896 P.2d 665 (1995). A moving defendant may meet this initial burden by pointing out that there is an absence of evidence to support the plaintiff's case. If a moving defendant meets this initial showing, then the inquiry shifts to the party with the burden of proof at trial, the plaintiff. *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225 & n.1, 770 P.2d 182 (1989). The plaintiff must then set forth specific facts demonstrating a genuine issue for trial; summary judgment should be entered if the nonmoving party fails to establish the existence of an element essential to that party's case. *Id.* at 225.

### *Malicious Prosecution*

¶29 To maintain an action for malicious prosecution, a plaintiff must allege and prove that (1) the prosecution was instituted or continued by the defendant, (2) there was want of probable cause for the institution or continuation of the proceeding, (3) the proceeding was instituted or continued through malice, (4) the proceeding was terminated on the merits in favor of the plaintiff or was abandoned, and (5) plaintiff suffered injury as a result of the prosecution. *Bender v. City of Seattle*, 99 Wn.2d 582, 593, 664 P.2d 492 (1983). A prima facie case of want of probable cause is established by proof that the proceedings were dismissed in favor of the plaintiff, but that prima facie proof may be rebutted by the defendant's evidence. *Peasley v. Puget Sound Tug & Barge Co.*, 13 Wn.2d 485, 498-99, 125 P.2d 681 (1942).

¶30 In moving the court to dismiss Mr. Youker's complaint, the County focused on what it contends is (1) undisputed evidence of probable cause, (2) the absence of evidence of malice, and (3) a superseding intervening cause of most of the damages Mr. Youker seeks to recover in the form of independent decisions by the prosecutor and the trial court in the criminal proceeding.

¶31 With respect to probable cause, the County argues that the sheriff's investigation produced sufficient evidence to prompt the prosecutor to commence a criminal prosecution and for the judge to find probable cause for arrest twice: at the preliminary appearance and when a bench warrant later issued after Mr. Youker's failure to appear for arraignment. But the fact that these independent findings of probable cause were made and the prosecution proceeded for a time—standing alone—is not sufficient to defeat the tort claim; if it were, it would swallow the cause of action.

¶32 But Washington cases have long held that probable cause is deemed established as a matter of law with respect to a given defendant if it clearly appears that the defendant provided the prosecuting attorney with a full and fair disclosure, in good faith, of all the material facts known to him or her, and the prosecutor thereupon preferred a criminal charge and caused arrest. *Bender*, 99 Wn.2d 582. Probable cause is deemed to exist on the basis of policy, explained in *Simmons v. Gardner* as follows:

> "Citizens must be left free to, in good faith, state to the proper officers the grounds for their belief that a crime has been committed, and that a certain person is the offender. It is true, they must have reasonable grounds for their belief, and act in good faith. This is all that the law requires. . . . This action is strictly guarded. It is never encouraged, except in plain cases. Were it otherwise, ill consequences would ensue to the public, for no one would willingly undertake to vindicate a breach of the public law, and to discharge his duty to society, with the prospect of an annoying suit staring him in the face."

46 Wash. 282, 288, 89 P. 887 (1907) (alteration in original) (internal quotation marks omitted) (quoting *Rogers v. Olds*, 117 Mich. 368, 370-71, 75 N.W. 933 (1898)). *Anderson v. Seattle Lighting Co.*, 71 Wash. 155, 157, 127 P. 1108 (1912) further elaborated on the reason for deeming probable cause to exist as a matter of law:

> [W]hen a prosecuting witness truthfully, fairly and fully presents to a competent practicing attorney all facts within his knowledge, and the attorney on consideration thereof advises a prosecution, such advice will protect the prosecuting witness from liability in an action for malicious prosecution, and that it will be held that probable cause existed. This must be so, for if a citizen who has just cause to believe, and honestly does believe, that a crime has been committed, after taking such precautions, cannot be protected from liability for damages, it would follow that a conviction would have to be guaranteed in every criminal prosecution, and that the criminal law would in many instances fail of enforcement.

¶33 A corollary is that if any issue of fact exists as to whether a malicious prosecution defendant fully and truthfully communicated all the material facts and circumstances, then the issue of fact must be submitted to a jury with proper instructions as to what constitutes probable cause, and the jury determines the issue. *Bender*, 99 Wn.2d at 594. Whether information not disclosed by the defendant was "material" is an issue of fact for the trier of fact; the prosecutor's testimony as to what he or she deemed material is evidence, but is not determinative. *Id.* at 593-94.

¶34 Mr. Youker claims that the deputies failed to disclose to the court and prosecutor the details of the no-contact order in place between Mr. and Ms. Youker, the fact that the deputies' information database produced other addresses for Ms. Youker different from the Nancy Street address, and that the deputies had not investigated Ms. Youker's representation that she resided at the Nancy Street residence before they searched it.

¶35 The summary judgment submissions established that Deputy White provided the prosecutor with all of the

documentation she had, which included, among other documents, a copy of the no-contact orders, the warrant for Ms. Youker's arrest, and the incident report, indicating an address for Ms. Youker different from the Nancy Street address. Mr. Youker has presented no evidence to contradict the deputies' testimony that they were unaware of the Tonasket address for Ms. Youker included in the dispatch office database. The many Washington decisions deeming probable cause to exist in malicious prosecution cases have never conditioned it on the defendant's having undertaken a sufficient investigation; it is consistently couched in terms of the defendant's having " 'made to the prosecuting attorney a full and fair disclosure, in good faith, of all the material facts known to him.' " *Id.* at 593 (quoting *Peasley*, 13 Wn.2d at 499-500). The undisputed evidence presented by the County establishes that Deputy White did make a full and fair disclosure, in good faith, of what was learned in the deputies' investigation. Probable cause is therefore deemed established as a matter of law.

¶36 Mr. Youker also failed to present evidence demonstrating any genuine issue of fact as to the required element of malice. Malice may be inferred from lack of probable cause and from proof that the investigation or prosecution was undertaken with improper motives or reckless disregard for the plaintiff's rights. *Turngren v. King County*, 104 Wn.2d 293, 306, 705 P.2d 258 (1985). But malice may not be inferred from the lack of probable cause alone; for the inference of malice to be justified, the plaintiff must also demonstrate affirmative acts disclosing at least some feeling of " ' "bitterness, animosity or vindictiveness towards the appellant." ' " *Moore v. Smith*, 89 Wn.2d 932, 943, 578 P.2d 26 (1978) (quoting *Barker v. Waltz*, 40 Wn.2d 866, 870, 246 P.2d 846 (1952) (quoting *Ton v. Stetson*, 43 Wash. 471, 475, 86 P. 668 (1906))). The "reckless disregard" that can support an inference of malice requires proof of bad faith, a higher standard than negligence. *State v. Chenoweth*, 160 Wn.2d 454, 468, 158 P.3d 595 (2007). Recklessness may be shown by establishing that the defendant actually entertained serious doubts. *Id.* at 479.

¶37 Mr. Youker's response to the County's motion for summary judgment did not explicitly address any evidence supporting the required element of malice. Instead, he focused on the alleged absence of probable cause, from which he presumably would have us infer malice. In the absence of any affirmative evidence whatsoever of improper motive or reckless disregard, an inference of malice is unwarranted as a matter of law. This is a second and independently sufficient reason warranting dismissal of the claim.

*False Arrest and False Imprisonment*

¶38 A false arrest occurs when a person with actual or pretended legal authority to arrest unlawfully restrains or imprisons another person. *Jacques v. Sharp*, 83 Wn. App. 532, 536, 922 P.2d 145 (1996). The gist of false arrest and false imprisonment is essentially the same, viz., the unlawful violation of a person's right of personal liberty, and a false imprisonment occurs whenever a false arrest occurs. *Heckart v. City of Yakima*, 42 Wn. App. 38, 39, 708 P.2d 407 (1985).

¶39 Officers enjoy a qualified immunity against liability for false arrest and imprisonment. For an arrest accomplished without a warrant, the immunity is limited to situations where the officer reasonably believed the arrested party committed a felony or to misdemeanor arrests where the arresting officer had reasonable cause to believe the crime was being committed in his presence and he acted in good faith on that belief. *Staats v. Brown*, 139 Wn.2d 757, 778, 991 P.2d 615 (2000) (citing *Plancich v. Williamson*, 57 Wn.2d 367, 357 P.2d 693 (1960); *Sennett v. Zimmerman*, 50 Wn.2d 649, 651, 314 P.2d 414 (1957)). It is available in cases where the officer makes an arrest under a facially valid warrant or process even if there are facts within his knowledge that would render it void as a matter of law; however, it is not available to an officer who provides incomplete information used to obtain the warrant. *Guffey*

*v. State*, 103 Wn.2d 144, 150, 690 P.2d 1163 (1984), *over-ruled on other grounds by Savage v. State*, 127 Wn.2d 434, 899 P.2d 1270 (1995); *and see Tyner v. Dep't of Soc. & Health Servs.*, 141 Wn.2d 68, 84, 1 P.3d 1148 (2000) (citing *Bender*, 99 Wn.2d at 592). When the same officer seeks a warrant and executes it, the officer cannot assert the facial validity of a warrant as an absolute defense to a false arrest or false imprisonment action, although the officer can still establish a defense to the action by proving the existence of probable cause to arrest. *Bender*, 99 Wn.2d at 592.

¶40 This probable cause "in fact" is different from the probable cause that is deemed to exist as a matter of law in the malicious prosecution context when prosecution has been commenced by a fully informed prosecutor. Probable cause that will defeat a claim for false arrest is proved by demonstrating the officer's knowledge of facts and circumstances that would lead a reasonable officer to believe a crime has been committed. *Bishop v. City of Spokane*, 142 Wn. App. 165, 170, 173 P.3d 318 (2007). This should be based on reasonably trustworthy information. *Id.*

¶41 Viewing the evidence in the light most favorable to Mr. Youker, we conclude that no reasonable jury could find that Deputy White lacked probable cause for her arrest of Mr. Youker. As events unfolded she and others at the county received information increasingly suggesting that the Youkers' divorced relations were not amicable or stable and that Ms. Youker might have lacked authority to consent to the search. But at the time of the arrests, Deputy White had the information received from Ms. Youker, who had demonstrated her access to Mr. Youker's home and both mail and personal effects supporting her claim to be living there; the deputy had located the rifle and ammunition under Mr. Youker's bed; she had confirmed that it was unlawful for him to have the gun in light of his prior conviction; and by the time of the county's second arrest of Mr. Youker, Deputy White had obtained statements from both of Ms. Youker's sons that the rifle belonged to Mr. Youker.

¶42 We also agree with the County that the action of the prosecutor was a superseding intervening cause that would limit any liability for false arrest and false imprisonment to damages accruing before criminal charges were filed by a fully informed prosecutor. While this is not the universal conclusion of the courts, it is a widely held conclusion and consistent with our Supreme Court's decisions in *Bishop v. Miche*, 137 Wn.2d 518, 532, 973 P.2d 465 (1999) and *Tyner*, 141 Wn.2d at 86; see *Townes v. City of New York*, 176 F.3d 138, 147 (2d Cir.) ("It is well settled that the chain of causation between a police officer's unlawful arrest and a subsequent conviction and incarceration is broken by the intervening exercise of independent judgment."), *cert. denied*, 528 U.S. 964 (1999), and cases cited therein.

### *Invasion of Privacy*

¶43 In support of his claim for invasion of privacy, Mr. Youker alleges that Deputies White and Black intentionally entered his residence without a search warrant and that their unauthorized entry constituted an intrusion highly offensive and objectionable to a reasonable person. Although the County's motion for summary judgment requested dismissal of all of Mr. Youker's claims, the parties' argument addressed to that claim has been negligible, both below and on appeal.

¶44 The principles of legal causation argued by the County apply to this claim but do not foreclose entirely a claim for damages. While the deputies' search and the fruits of the search are a cause in fact of all of the damages Mr. Youker seeks to recover, the search is not the legal cause of injury or damage occurring after the fully informed decision to prosecute. *Cf. Miche*, 137 Wn.2d 518; *Tyner*, 141 Wn.2d at 86. Cases from other jurisdictions are in accord. *See Konopka v. Borough of Wyoming*, 383 F. Supp. 2d 666, 675 (M.D. Pa. 2005) (if search was unconstitutional, plaintiff would be entitled to recover only damages directly related

to the invasion of privacy, including, where appropriate, damages for physical injury, property damage, injury to reputation, et cetera, but cannot be compensated for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution).

¶45 Apart from this issue of damages, we have found it impossible to address the dismissal of the invasion of privacy claim without injecting issues that were not argued by the parties, something we will not do. We therefore reverse the dismissal of that claim and remand to the trial court for briefing and reargument.

¶46 We otherwise affirm and remand for proceedings consistent with this opinion.

KORSMO, A.C.J., and SWEENEY, J., concur.

Review denied at 173 Wn.2d 1002 (2011).