# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION  II

| | |
|---|---|
| HAFID TAHRAOUI, an individual, | No.  49625-9-II |
| Appellant, | |
| v. | UNPUBLISHED OPINION |
| FRANKLIN  BROWN;  RUSTIN  WILDER; ERIN ORBITS; JOHN and JANE DOES 1-4 individually, and in his or her official capacity; PIERCE COUNTY, a municipal corporation; PIERCE  COUNTY  SHERIFF,  a  county agency;      and      PIERCE      COUNTY PROSECUTOR, a county agency, | |
| Respondents. | |

BJORGEN, C.J. — Hafid Tahraoui appeals from the superior court's grant of summary judgment and award of statutory attorney fees and costs against him in his tort claim for malicious prosecution.  He argues that genuine issues of material fact preclude a grant of summary judgment and that the superior court improperly awarded statutory attorney fees and costs.

We hold that the superior court properly granted summary judgment and properly awarded statutory attorney fees to the defendants. We hold also that the superior court erred in awarding the jury demand fee as a cost. Consequently, we affirm in part and reverse in part.

FACTS

On May 10, 2008, Tahraoui was at an estate sale at the residence of Charles Pate. Tahraoui asked Pate how much he wanted for an aluminum trailer hitch, and Pate responded that it was not for sale. After Tahraoui left, Pate noticed that the trailer hitch was missing. On May 11, Pate called Tahraoui and asked him to return the hitch. Tahraoui told Pate that it would be inconvenient to return the hitch at that time and that he would return it later. Tahraoui also told Pate that he had taken the hitch because he felt that he was short-changed at the estate sale and the hitch served as a compromise. Tahraoui stated that he wanted $100 for its return. Pate then called law enforcement to report the hitch as stolen.

On May 11, Deputy Franklin Brown interviewed Pate and another witness, Shawna Fore. Fore told Brown that she saw Tahraoui place the trailer hitch into his vehicle before he left the estate sale. Brown then called Tahraoui and left a message stating that he could potentially be arrested if he did not return the trailer hitch. On May 12, Brown received a phone call from Pate, who stated that Tahraoui had called him in order to make arrangements to return the trailer hitch. However, when Brown called Tahraoui, he denied making any arrangements with Pate.

Also on May 12, Lieutenant Rustin Wilder was notified of an administrative complaint filed by Taharoui regarding Brown. The complaint alleged that Brown was using his authority and position as a deputy sheriff to influence a dispute between Pate and Tahraoui. Wilder spoke with Brown, who relayed that he had no prior knowledge of Pate and that Tahraoui had "spoken

2

with the victim and tried to sell the stolen hitch back to the victim for $100." Clerk's Papers (CP) at 44. Wilder interpreted this information as "an admission that [Tahraoui] had the hitch and was trying to extort money from the victim for recovery of the stolen property." CP at 44. Wilder then called Tahraoui to attempt to set up a ruse to have him come to the police station in order to arrest him. Tahraoui declined to go to the police station.

On May 23, Tahraoui called Deputy Montgomery Minion to give him his version of the incident. According to Tahraoui, on May 10 he was at Pate's estate sale and Pate's father, Shelly,[1] sold him the trailer hitch and other items for $70. Tahraoui stated that he "gave [Shelly] one hundred dollars in $20.00 bills and in return got a $100.00 bill." CP at 38. When Tahraoui returned home, he noticed that he was missing $100.00 and called Pate to ask if he had seen the $100.00 bill Shelly had given him. Pate responded that he did not have any $100.00 bills and that Shelly was the only one handling the cash at the sale. Tahraoui also recounted how on May 11, Pate had called him claiming that he had stolen the trailer hitch.

After hearing his account, Minion told Tahraoui that his account differed from those of Pate, Brown, and Wilder and that he would still need to submit the case to the prosecutor's office for review. According to Minion, Tahraoui acknowledged that if he returned the hitch to Pate the incident could likely be resolved and agreed to make arrangements with Pate to return the trailer hitch. However, at his deposition Tahraoui disputed that he "agreed" to return the hitch. CP at 129. Tahraoui stated that he "said I'll think about it, but I never said I will–I will give you the hitch or made an arrangement to give them the hitch." CP at 129.

---

[1] Shelly is also referred to as Pate's stepfather.

3

In Minion's report of July 30, 2008, he stated that he had unsuccessfully attempted to contact Pate for two months despite leaving several messages and that Pate had moved to Colorado. Consequently, Minion decided to close the case "due to the lack of interest by the victim." CP at 62.

On February 29, 2009, the Pierce County Prosecutor's Office charged Tahraoui with third degree theft based on the incident involving Pate. On May 5, the charge was dismissed with prejudice. On July 11, 2011, Tahraoui filed a complaint against Brown, Wilder, and Minion (Officers) alleging malicious prosecution. On August 25, 2016 the Officers filed their motion for summary judgment on Tahraoui's malicious prosecution claim.

The superior court granted the Officers' motion for summary judgment and dismissed Tahraoui's claim for malicious prosecution. The court also awarded statutory attorney fees and costs to the Officers. Tahraoui appeals the summary judgment ruling and award of statutory attorney fees and costs.

## ANALYSIS

### I. SUMMARY JUDGMENT STANDARDS

We review a grant of summary judgment de novo, considering all the evidence and reasonable inferences from the evidence in the light most favorable to the nonmoving party. *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). Summary judgment is only appropriate if no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. *Id*. A material fact is a fact that affects the outcome of the litigation. *Id*. at n.2. However, a nonmoving party cannot defeat a motion for summary

judgment with conclusory statements of fact. *Baldwin v. Silver*, 165 Wn. App. 463, 471, 269 P.3d 284 (2011).

## II. MALICIOUS PROSECUTION

Tahraoui argues that the superior court erred by dismissing his claim for malicious prosecution because probable cause for his third degree theft prosecution did not exist as a matter of law with regard to any of the Officers. We disagree.

In order to prevail on a claim for malicious prosecution, a plaintiff must show five elements:

> (1) the prosecution was instituted or continued by the defendant, (2) there was want of probable cause for the institution or continuation of the proceeding, (3) the proceeding was instituted or continued through malice, (4) the proceeding was terminated on the merits in favor of the plaintiff or was abandoned, and (5) plaintiff suffered injury as a result of the prosecution.

*Youker v. Douglas County*, 162 Wn. App. 448, 461, 258 P.3d 60 (2011) A prima facie case of want of probable cause is established by proof that the proceedings were dismissed in favor of the plaintiff. *Youker*, 162 Wn. App. at 461.

More specifically to this appeal,

> probable cause is deemed established as a matter of law with respect to a given defendant [in the tort claim] if it clearly appears that the defendant provided the prosecuting attorney with a full and fair disclosure, in good faith, of all the material facts known to him or her, and the prosecutor thereupon preferred a criminal charge.

*Youker*, 162 Wn. App. at 462. A corollary principle is that "if any issue of fact exists as to whether a malicious prosecution defendant fully and truthfully communicated all the material facts and circumstances, then the issue of fact must be submitted to a jury." 162 Wn. App. at 463.

As examples of these principles, *Youker* held that "[t]he undisputed evidence presented by the County establishes that Deputy White did make a full and fair disclosure, in good faith, of what was learned in the deputies' investigation. Probable cause is therefore deemed established as a matter of law." 162 Wn. App. at 464. On the other hand, in *Bender v. City of Seattle*, the Supreme Court held that the defendant detective had not established probable cause as a matter of law because the jury had to determine whether the detective's undisclosed information gathered during investigation was material to the prosecution's determination of probable cause. 99 Wn.2d 582, 595-96, 664 P.2d 492 (1983).

In this case, it is undisputed that the prosecuting attorney decided to file a third degree theft charge against Tahraoui based on the police reports created by the Officers in this case. Therefore, to determine whether probable cause exists with respect to each of the Officers as a matter of law, we must determine whether the undisputed facts show that the Officer made a full and fair disclosure of all material facts known at the time.

A.      Deputy Brown

Tahraoui claims that Brown did not provide the prosecution with a full and fair disclosure of all the facts known to him at the time when he filed his report. He states that Brown could not have completed a good faith investigation because only five minutes elapsed from Brown arriving at Pate's residence to Brown calling Tahraoui regarding a potential arrest. However,

> [t]he many Washington decisions deeming probable cause to exist in malicious prosecution cases have never conditioned it on the defendant's having undertaken a sufficient investigation; it is consistently couched in terms of the defendant's having "made . . . a full and fair disclosure, in good faith, of all the material facts known to him."

6

*Youker*, 162 Wn. App. at 464 (alteration in original) (quoting *Bender*, 99 Wn.2d at 593). Furthermore, Tahraoui has not cited to any authority suggesting that the sufficiency of an investigation is an element of malicious prosecution. Therefore, the amount of time Brown spent investigating is irrelevant to whether he made a full and fair disclosure of all material facts known to him at the time. Similarly, Brown's failure to elicit Tahraoui's version of the events or interview Shelly before considering a potential arrest is not relevant to whether Brown made a full and fair disclosure of all material facts known at the time.

Tahraoui's remaining assertions regarding Brown are conclusory statements that Brown was biased and that "Brown made a false claim," which are insufficient to create a genuine issue of fact for summary judgment. Br. of Appellant at 14; *Baldwin*, 165 Wn. App. at 471. Therefore, because Tahraoui has not provided any evidence indicating that Brown had knowledge of facts material to the theft investigation and failed to disclose those facts, probable cause exists as a matter of law with respect to Brown's actions. For that reason, Brown is entitled to judgment as a matter of law.

B.      Lieutenant Wilder

Tahraoui claims that Wilder did not conduct an adequate investigation into the theft claim before attempting to arrest Tahraoui. As stated above, an assertion that law enforcement did not perform a thorough enough investigation is not determinative as to whether law enforcement made a full and fair disclosure of all material facts known at the time. *Youker*, 162 Wn. App. at 464. Although Tahraoui contends that "[s]ince[] Brown's determination was wrong and unfair;

Wilder's decision [to recommend charges] is also wrong and unfair," Wilder's decision to rely on Brown's investigation does not suggest that Wilder failed to disclose some information material to the alleged theft incident. Reply Br. of Appellant at 7.

Therefore, because Tahraoui has not provided any evidence indicating that Wilder had knowledge of facts material to the theft investigation and failed to disclose those facts, probable cause exists as a matter of law with regard to Wilder's actions. For that reason, Wilder is entitled to judgment as a matter of law.

C.    Deputy Minion

Tahraoui contends that Minion did not make a full and fair disclosure of all material facts because Minion "knew or should have known that Tahraoui was innocent." Br. of Appellant at 17. Tahraoui also argues that Minion did not advise the prosecuting attorney of the absence of probable cause. However, Tahraoui does not explain why Minion knew or should have known that Tahraoui was innocent or why probable cause was absent, other than stating that Minion should have believed his version of the events.

Therefore, because Tahraoui has not provided any evidence indicating that Minion had knowledge of facts material to the theft investigation and failed to disclose those facts, probable cause exists as a matter of law with regard to Minion's actions. For that reason, Minion is entitled to judgment as a matter of law.

III. ATTORNEY FEES AND COSTS

Tahraoui argues that the superior court improperly awarded costs and statutory attorney fees, including the jury demand fee, to the Officers.

8

Generally, a prevailing party may recover attorney fees authorized by statute, equitable principles, or agreement between the parties. *Landberg v. Carlson*, 108 Wn. App. 749, 758, 33 P.3d 406 (2001). We review whether a statute authorizes an award of attorney fees de novo. *Bearden v. McGill*, 193 Wn. App. 235, 240, 372 P.3d 138 (2016), *review granted*, 188 Wn.2d 1015 (2017).

A.      Timeliness

Tahraoui maintains that the Officers were required to raise the issue of statutory attorney fees and costs in their motion for summary judgment and therefore their request for fees is untimely. Cost bills are due 10 days after the entry of judgment, CR 54(d)(1), although the clerk is required to tax certain costs in the absence of a cost bill. CR 78(e). The superior court granted the Officers' motion for summary judgment on September 30, 2016. On October 10, which was 10 days after the superior court's order on summary judgment, the Officers submitted a cost bill. Therefore, the Officers' request for statutory attorney fees and costs was timely.

B.      Statutory Authority

Tahraoui also argues that awarding costs to the Officers for the jury demand fee exceeded the superior court's authority under RCW 4.84.010(1). We agree.

The meaning of a statute is a question of law reviewed de novo. *Dep't of Ecology v. Campbell & Gwinn, L.L.C.*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). In interpreting a statute, our "fundamental objective is to ascertain and carry out the Legislature's intent, and if the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." *Campbell & Gwinn*, 146 Wn.2d at 9-10. In determining plain

9

meaning, we may examine "the statute in which the provision at issue is found, as well as related statutes or other provisions of the same act in which the provision is found." *Id.* at 10.

Former RCW 4.84.010(1) (2007) authorizes the prevailing party to recover "filing fees." Under CR 38(b), at or before the time a case is called to be set for trial, a party may demand a trial by jury by serving and filing the demand and by paying the jury fee required by law. Under former RCW 36.18.016 (2006), a party requesting a 12-person jury must pay a fee of $250. In this case, the Officers submitted a 12-person jury demand.

The issue presented is whether a jury demand fee is the sort of "filing fee" that may be recovered in civil actions as a cost under the statutes noted above. Our Supreme Court has explained that "[c]osts have historically been very narrowly defined, and RCW 4.84.010 limits cost recovery to a narrow range of expenses such as filing fees, witness fees, and service of process expenses." *Hume v. Am. Disposal Co.*, 124 Wn.2d 656, 674, 880 P.2d 988 (1994). Following *Campbell & Gwinn*, we examine related statutes in attempting to determine the plain meaning of "filing fees" in former RCW 4.84.010(1). A related statute, former RCW 36.18.016(3)(a), imposes a jury demand fee in civil actions. Former RCW 36.18.016(3)(b), in turn, authorizes the recovery of a jury demand charge as a cost under RCW 10.46.190 upon conviction in criminal cases. Neither former RCW 36.18.016(3)(b) nor RCW 10.46.190 purport to authorize the recovery of a jury demand fee or charge in civil actions.

Under the canon of construction, expressio unius exclusio alterius est, "'[w]here a statute specifically designates the things or classes of things upon which it operates, an inference arises in law that all things or classes of things omitted from it were intentionally omitted by the legislature.'" *State v. Swanson*, 116 Wn. App. 67, 75, 65 P.3d 343 (2003) (quoting *Wash.*

No. 49625-9-II

*Natural Gas Co. v. Pub. Util. Dist. No. 1*, 77 Wn.2d 94, 98, 459 P.2d 633 (1969)). Under this canon, the express authorization of the recovery of a jury demand fee in criminal actions and the absence of corresponding authorization for civil actions conveys legislative intent that the jury demand fee in civil actions is not a "filing fee" recoverable as a cost under former RCW 4.84.010. Therefore, consistently with *Campbell & Gwinn*, we hold that the plain meaning of former RCW 4.84.010(1) does not authorize the recovery of a jury demand fee as a cost in civil actions.

CONCLUSION

We affirm the superior court's grant of summary judgment to the Officers. We also affirm the award of statutory attorney fees, but reverse the award of the jury demand fee to the Officers as a cost.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Bjorgen, C.J.

We concur:

Worswick, J.

Melnick, J.

11