FILED
11/8/2021
Court of Appeals
Division I
State of Washington

## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | |
|---|---|
| RJ GAUDET & ASSOCIATES, LLC,<br>a Washington limited liability company,<br><br>Respondent<br><br>v.<br><br>VASILICA CECILIA ANITEI and<br>CRISTIAN ANITEI, husband and wife,<br>individually and on behalf of the<br>marital community comprised thereof,<br><br>Appellants. | No. 82448-1-I<br><br><br><br>UNPUBLISHED OPINION |

VERELLEN, J. — In this dispute over attorney fees, the law firm sued its former client to recover unpaid fees and litigation expenses. The client asserted affirmative defenses and counterclaims. On cross motions for summary judgment, the trial court (1) dismissed with prejudice the client's counterclaims, (2) "reject[ed]" certain affirmative defenses, (3) granted partial summary judgment establishing the client's liability for breach of contract and damages of $40,395.79 plus interest, and (4) reserved for trial "the additional amounts allegedly due" to the law firm.[1] The premise of the trial court's partial summary judgment for damages was that the client did not dispute $40,395.79 of the billed fees and expenses. But viewed in a light most favorable to the client, there is evidence the client disputed fees and expenses

---

[1] Clerk's Papers (CP) at 1461-62.

itemized in the final and prior invoices. We reverse the partial summary judgment for damages of $40,395.79 and remand for trial. Otherwise, we affirm.

## FACTS

Attorney RJ Gaudet is the sole owner and principal of RJ Gaudet & Associates, LLC. On February 28, 2013, Vasilica Cecilia Anitei (Cecilia) hired the law firm to represent her in an employment discrimination case against the Port of Seattle. Anitei and the law firm agreed to a hybrid fee arrangement consisting of discounted hourly rates for attorney and legal assistant work, plus a 20 percent contingency fee.[2]

Gaudet filed a complaint on Anitei's behalf in federal district court. Although the attorney-client relationship became strained over time, Gaudet continued to represent Anitei throughout the case, which ended in a defense verdict after a nine-day jury trial in September 2014. In November 2014, the federal court permitted Gaudet to withdraw from the case. The law firm issued a final invoice (Invoice 131) to Anitei on November 11, 2014. The balance due was $130,726.81. Anitei disputed the bill and did not pay.

More than five years later, in February 2020, the law firm sued Anitei and her spouse, Cristian Anitei, to recover the unpaid fees and litigation expenses. The complaint alleged breach of contract, promissory estoppel, fraud, and account stated.

---

[2] Anitei and the law firm later agreed to different terms for work performed after August 14, 2014. The amendment to the initial engagement letter provided that Anitei would not pay the law firm's hourly rates but would pay an increased contingency fee of 40 percent and continue to be responsible for litigation expenses.

The Aniteis answered the complaint.  They asserted 15 affirmative defenses, including the statute of limitations, breach of contract, duress, "unclean hands," fraud, and set-off.  They also alleged as counterclaims breach of fiduciary duties, legal malpractice, and violation of the Washington Consumer Protection Act (CPA), chapter 19.86 RCW.

The law firm moved for summary judgment, seeking dismissal of the Aniteis' counterclaims and judgment for the amount due under the final invoice.  The law firm argued that each of the Aniteis' counterclaims was barred by the statute of limitations and also failed on the merits. The law firm claimed it was entitled to summary judgment on its breach of contract claim because the Aniteis failed to "introduce competent evidence to establish a genuine issue of material fact relative to specific charges" or identify a genuine issue of material fact as to any affirmative defense.[3]

The Aniteis responded by filing their own motion for summary judgment.  They claimed to have paid almost $53,000 in legal fees, although they also alleged that they hired the law firm on Gaudet's assurance that their legal costs would not exceed $30,000.  The Aniteis contended that Gaudet generated unnecessary expenses and charged them for excessive consultation with attorneys and other experts during the representation.  They argued that the law firm was not entitled to recover fees because, among other reasons, the terms of the agreement for legal services were unethical and violated certain Rules of Professional Conduct (RPCs).

---

[3] CP at 281.

3

After a hearing, the trial court granted the law firm's motion, in part, dismissing the Aniteis' counterclaims with prejudice and "rejecting" their affirmative defenses seeking a set-off based on an alleged breach of the standard of care, breach of fiduciary duties, and violation of the CPA.[4] The court granted partial summary judgment establishing the Aniteis' liability for breach of contract and granting judgment for an "undisputed" amount of damages, $40,395.79 plus interest.[5] The court reserved for trial any additional amounts allegedly owed to the law firm. The trial court later entered judgment of $71,640.68, which included prejudgment interest, costs, and statutory attorney fees, and also entered findings under CR 54(b) certifying its partial summary judgment order as a final judgment. The Aniteis appeal.

## ANALYSIS

Service of Process

The Aniteis challenge the trial court's order which authorized service by mail after the law firm was unable to accomplish personal service of process.[6]

"We review the sufficiency of service of process de novo."[7] A court may allow substitute service by publication or mail if the petitioner establishes "(1) that the defendant could not be found in Washington after a diligent search, (2) that the

---

[4] CP 1406.

[5] The court also granted the law firm's motion to strike two declarations submitted by the Aniteis, dismissed claims against Gaudet personally, who is not a party to the lawsuit, and granted the Aniteis' motion, in part, dismissing the law firm's claims of fraud and promissory estoppel as barred by the statute of limitations. These aspects of the trial court's order are not at issue in this appeal.

[6] The trial court denied the Aniteis' motion to dismiss alleging insufficient of service of process and then denied reconsideration.

[7] Northwick v. Long, 192 Wn. App. 256, 260, 364 P.3d 1067 (2015).

4

defendant was a resident of Washington, and (3) that the defendant had either left the state or concealed [themselves] within it, with intent to defraud creditors or avoid service of process."[8]  "'Due diligence' requires that the plaintiff make 'honest and reasonable efforts to locate the defendant.'"[9]

The Aniteis claim there is no evidence that they willfully evaded service or that the law firm conducted a diligent search to find them.  They point out that the process server attempted service only during "regular work hours."[10]  And they insist that the process server's declaration is "false" because he "misrepresented" certain details.[11]

The record indicates that the process server attempted service at different times and on different days of the week, including weekend days.  There is no evidence of whether, when, or where the parties worked during the period in question.  The parties agree that the process server's declaration misstated the timing of the March 5, 2020 attempt to serve them as 8:30 p.m., not a.m.  It is also undisputed that on that date, Cristian approached the home and saw the process server standing near the edge of his driveway trying to get his attention.  He drove past his house without stopping.

No authority supports the Aniteis' apparent position that service of process may not take place during evening hours.  And the fact that their surveillance system

---

[8] Pascua v. Heil, 126 Wn. App. 520, 526-27, 108 P.3d 1253 (2005); RCW 4.28.100(2) (outlining requirements for allowing substitute service by publication).

[9] Id. at 529 (quoting Martin v. Meier, 111 Wn.2d 471, 482, 760 P.2d 925 (1988).

[10] Appellant's Br. at 30.

[11] Id. at 29.

did not capture an image of the process server on their doorstep on one date listed in the declaration does not establish there was no attempted service on that date.

The evidence in the record supports the determination that the law firm conducted a diligent search and that the failure to accomplish personal service was due to willful concealment. The law firm's counsel sent the Aniteis a demand letter approximately a month before attempting service advising them that the law firm would promptly initiate legal action if they did not respond. The post office did not return the letter as undeliverable. Counsel for the law firm also confirmed that the Aniteis had not submitted a change of address to the post office. Then, the process server made six attempts to serve the parties at their home over the course of approximately four weeks. Each time, no one appeared or answered the door. During one of those attempts, Cristian saw the process server and refused to stop. The trial court did not err in allowing substitute service.

Venue

The Aniteis challenge the trial court's denial of their motion to transfer venue to Snohomish County, where they reside. Opposing the motion, the law firm argued that because its complaint included a fraud claim based in tort, RCW 4.12.020(3) provided the option of suing in the county "in which the cause of action or some part thereof arose." The law firm claimed that some part of the fraud arose in King County, where the law firm represented Anitei in federal court.

We review de novo a ruling on a motion to transfer venue when the basis for the motion is the assertion the original venue was not authorized by statute.[12] There may be room to debate whether RCW 4.12.020(3), relied upon by the law firm, has any application when the law firm sought "classic economic damages" for fraud rather than "recovery of damages for injuries to the person or for injury to personal property."[13]

But, the Aniteis did not seek discretionary review of the venue ruling and now seek to "set aside an unfavorable judgment on the basis that venue was laid in the wrong county."[14] In these circumstances, our courts have required a showing of prejudice.[15] The Aniteis have articulated no prejudice stemming from the denial of their motion to transfer venue.

Counterclaims

The Aniteis challenge the trial court's order dismissing their counterclaims with prejudice. But the Aniteis acknowledged in their answer that by the time the law firm filed its complaint in February 2020, the statute of limitations had expired on their claims of professional negligence, breach of fiduciary duties, and violation of the

---

[12] Moore v. Flateau, 154 Wn. App. 210, 214, 225 P.3d 361 (2010).

[13] Id. at 217 (holding that when the legislature amended RCW 4.12.020(3), its intent was simply to "treat all injury actions in the same manner as automobile accident cases," not to "expand the special venue rule to all damage actions.").

[14] Lincoln v. Transamerica Inv. Corp., 89 Wn.2d 571, 578, 573 P.2d 1316 (1978)

[15] Id.; Geroux v. Fleck, 33 Wn. App. 424, 427-28, 655 P.2d 254 (1982); Youker v. Douglas County, 162 Wn. App. 448, 460, 258 P.3d 60 (2011).

CPA.[16]  A party may only assert counterclaims that are not barred by the statute of limitations when the action is commenced.[17]  The trial court did not err in dismissing the counterclaims.

Affirmative Defenses

The Aniteis contend the trial court improperly dismissed their affirmative defenses.  They point out that, apart from addressing their entitlement to a set-off related to professional negligence, breach of fiduciary duty, and a CPA violation, the law firm's briefing below did not raise specific objections or arguments as to their defenses.  However, the court's order did not dismiss any affirmative defenses that were not addressed in the parties' briefing.  The court granted summary judgment only as to the defense seeking a "[s]et-[o]ff relative to [the Aniteis'] allegations of [the law firm's] breach of the standard of care, breach of fiduciary duty, and violation of the [CPA]."[18]  The Aniteis fail to establish error.[19]

Summary Judgment as to Liability and Partial Damages

The premise of the trial court's grant of partial summary judgment of $40,395.79 in favor of the law firm was that all the fees and expenses billed prior to

---

[16] See Huff v. Roach, 125 Wn. App. 724, 729, 106 P.3d 268 (2005) (citing RCW 4.16.080(3) (three-year limitation period applies to legal malpractice claim); Hudson v. Condon, 101 Wn. App. 866, 874, 6 P.3d 615 (2000) (claim of breach of fiduciary duty subject to three-year statute of limitation); RCW 19.86.120 (four-year limitation period applies to claims under the CPA).

[17] See J.R. Simplot Co. v. Vogt, 93 Wn.2d 122, 126, 605 P.2d 1267 (1980).

[18] CP 1406.

[19] Inasmuch as the Aniteis raise different arguments about the court's ruling on affirmative defenses in their reply brief, we need not consider arguments raised for the first time in a reply brief. Bergerson v. Zurbano, 6 Wn. App. 2d 912, 926, 432 P.3d 850 (2018).

the final invoice were undisputed and a trial was required only as to the new fees and new expenses itemized in the final invoice, which the trial court referred to as the "unstipulated fees and costs."[20] Because there is evidence that the Aniteis disputed the reasonableness of fees and expenses in the prior invoices, the premise fails, and summary judgment was improper.

Appellate courts review a summary judgment order de novo and perform the same inquiry as the trial court.[21] A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact."[22] We view all facts and reasonable inferences in the light most favorable to the nonmoving party.[23]

In an action filed by an attorney to collect legal fees, the burden is on the attorney "to prove by a preponderance of the evidence both the services rendered and the reasonable value thereof."[24] An attorney must present "'reasonable documentation of the work performed.'"[25]

---

[20] Report of Proceedings (RP) (Jan. 15, 2021) at 22.

[21] Borton & Sons, Inc. v. Burbank Props., LLC, 196 Wn.2d 199, 205, 471 P.3d 871 (2020).

[22] CR 56(c).

[23] Owen v. Burlington N. Santa Fe R.R. Co., 153 Wn.2d 780, 787, 108 P.3d 1220 (2005) (quoting Ruff v. King County, 125 Wn.2d 697, 703, 887 P.2d 886 (1995)).

[24] Dailey v. Testone, 72 Wn.2d 662, 664, 435 P.2d 24 (1967).

[25] Scott Fetzer Co., Kirby Co. Div. v. Weeks, 122 Wn.2d 141, 151, 859 P.2d 1210 (1993) (quoting Bowers v. Transamerica Title Ins. Co., 100 Wn.2d 581, 597, 675 P.2d 193 (1983)).

At the hearing on the parties' motions, the law firm asserted that the Aniteis did not dispute the fees and expenses of $93,256.79 billed on invoices prior to the final invoice. The law firm conceded that the Aniteis disputed the new charges ($75,340.70) identified on Invoice 131. Then the law firm subtracted the amount the Aniteis claimed to have paid in legal fees and expenses, $52,870,[26] from $93,256.79, and characterized the difference between these two amounts as "undisputed" debt.[27]

In his January 3, 2021 declaration, Gaudet asserted that the Aniteis did not dispute and, in fact, accepted all of the $65,741.69 charges in the May 16, 2014 Invoice 128 and promised to pay all prior invoices in full. But viewed in the light most favorable to the Aniteis, there is evidence to the contrary.

Upon receipt of Invoice 131 for $130,726.81, which included $55,386.11 in overdue charges stemming from the May (128) and September (130) invoices, Cecilia sent the law firm a letter stating, "I hereby let you know that I dispute all your billing charges."[28] In her December 16, 2020 declaration, Cecilia discussed why she "disputed and protested to the astronomical charges."[29] Her January 4, 2021 declaration also noted that Invoice 128, dated May 16, 2014, for $65,741.69 was "a huge bill that completely shocked me. . . . I disputed the bills received and

---

[26] The law firm asserted that the Aniteis paid approximately $5,000 less, but for purposes of granting partial summary judgment proposed that the court construe the amount of prior payments in the Aniteis' favor.

[27] The difference between those figures is $40,386.79. However, the court entered judgment for a slightly different amount, $40,395.79.

[28] CP at 720.

[29] CP at 487.

complained multiple times about the way money [had] been spent during the litigation."[30]

And, contrary to the arguments of the law firm on appeal, the disputes were not merely vague and general protests. For example, the Aniteis offer specific disputes over incurring costs through a third-party vendor on the eve of trial to unnecessarily relabel exhibits, ignoring directions to use payments into the IOLTA fund to pay trial expenses, and charging excessive time consulting with external attorneys on legal and procedural topics, all in the context of Gaudet moving to withdraw shortly before trial based upon his lack of trial experience and requiring, two weeks before trial, the addition of two external attorneys with trial experience to conduct the trial. These specific objections raise viable challenges to the reasonableness of the fees and expenses billed in both the final and prior invoices. There were no stipulated fees or expenses.

The amount of damages is a question for the trier of fact, unless reasonable minds could not differ.[31] In this case, reasonable minds could differ as to whether $40,395.79 of the charges listed in Invoice 131 were reasonable and undisputed. On de novo review, the law firm is not entitled to a partial summary judgment for damages of $40,395.79.

The Aniteis also claim that summary judgment on liability was improper because, in opposing their motion for summary judgment, the law firm admitted to a

---

[30] CP at 670-71.

[31] C 1031 Props., Inc. v. First Am. Title Ins. Co., 175 Wn. App. 27, 34, 301 P.3d 500 (2013).

dispute about the existence of an agreement to cap fees. But the law firm "categorically" denied agreeing to limit fees, and neither the engagement letter nor later amendment placed a limit on the fees that could be incurred in the representation. The Aniteis rely on e-mail messages in the context of a discussion about the estimated initial costs to sue the Port, wherein they represented that they had the ability to "cover" up to $30,000 in the near term.[32] Even viewed in a light most favorable to them, the e-mails are not an objective manifestation of intent to retain the law firm subject to a limit on the maximum fees they could incur. There is no genuine issue of material fact. The parties did not agree to a $30,000 limit on attorney fees.[33]

The Aniteis further contend that the trial court erred in granting partial summary judgment on liability because the legal services agreement is "void" as the law firm is organized as a limited liability company, which is not a "valid corporate entity offering legal services."[34] The Aniteis provide no persuasive authority that the law firm's organization as an limited liability corporation precludes summary judgment. And likewise, although the Aniteis allege a violation of certain RPCs, there is a distinction between such violations and the standards for civil liability, and none

---

[32] CP at 494.

[33] See Ruff v. King County, 125 Wn.2d 697, 704, 887 P.2d 886 (1995) (question of fact may be determined as a matter of law when reasonable minds can reach only one conclusion) (quoting Hartley v. State, 103 Wn.2d 768, 775, 698 P.2d 77 (1985)) .

[34] Appellant's Br. at 43.

of their cited authority suggests that the specific violations they allege, if established, would invalidate the contract.[35]

We reverse the order granting partial summary as to the judgment for damages of $40,395.79 and otherwise affirm.[36]

Reversed and remanded.

WE CONCUR:

---

[35] See LK Operating, LLC v. Collection Grp., LLC, 181 Wn.2d 48, 90, 331 P.3d 1147 (2014) ("Unquestionably, the RPCs do not purport to set a standard for civil liability.").

[36] We reject the Aniteis' challenge to the partial summary judgment order based on CR 54(d). That rule authorizes the trial court to examine the evidence before it and determine what facts appear to be without controversy. It further allows a trial court to reserve disputed issues for trial. The trial court's order here complied with the rule by summarily deciding liability, an issue of law, and reserving damages for trial. We reverse the partial judgment for damages not because the court failed to make a finding that identified a lack of dispute but because the record does not support that finding.